STATE, Respondent, v. FROELICH, Appellant.

*No. State 96. Argued December 3, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 267.)

552

554

For the appellant the cause was submitted on the brief of *L. William Staudenmaier* of Milwaukee, and for the respondent on the brief of *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney of Milwaukee county, and *Lee Edward Wells,* assistant district attorney.

BEILFUSS, J. The major thrust of defendant's argument on this appeal is that withdrawal of his plea of guilty is necessary to correct a "manifest injustice." The plea in question here was entered on November 22, 1968, and therefore the issues presented on this appeal must be decided in view of the status of the law at that time, prior to this court's decision in *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713.

In setting forth the procedure to withdraw a guilty plea, in *Pulaski v. State* (1964), 23 Wis. 2d 138, 126 N. W. 2d 625, this court said that the motion was addressed to the discretion of the court in the interest of justice, and that the court has the inherent power to hear and determine such a motion. In *Pulaski,* this court, at page 143, adopted the rule that:

" '. . . on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear, or inadvertence. . . .' *Kercheval v. United States* (1927), 274 U. S. 220, 47 Sup. Ct. 582, 71 L. Ed. 1009."

This remedy was further developed in *State v. Reppin* (1967), 35 Wis. 2d 377, 151 N. W. 2d 9, where this court adopted the "manifest injustice" test which was approved by the American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty, Part II, pp. 9, 10, and taken from Rule 32 (d) of the Federal Rules of Criminal Procedure. The court expressly noted in *Reppin* that the four fact situations described in the test were not exhaustive, and that other facts could constitute a "manifest injustice" which would require the granting of a motion to withdraw a plea of guilty. The *Reppin* test has continuously been applied by this court and was further implemented in *Ernst v. State, supra,* which it has been noted is not applicable here because of its prospective application.

The defendant contends that withdrawal of his guilty plea is necessary to correct a "manifest injustice" because it was obtained as a result of his below average intelligence, the trial court's failure to inform him of the rights he was waiving by entering such a plea, and his confusion over the sentence he would receive if he plead guilty.

In the motion prepared by the defendant himself, he alleged that: ". . . the plea was not a voluntary plea but induced by threats, promises and coercion by failure to understand all circumstance[s]." In the accompanying affidavit he alleged: ". . . that defendant entered the plea of guilty based upon the promise that other charges would be dropped and that the defendant would receive leniency from the court and district attorney's office for entering said plea of guilty." The third argument

which he raises on this appeal is not that an agreement had been made and violated by the district attorney but rather that he concluded that one had been made and relied on it in entering his plea. It may reasonably be said that this question is included within the scope of the issue raised in the motion and therefore is properly before the court on appeal.

As to the other two arguments, the level of defendant's intelligence and the procedure used by the trial court in accepting his plea will be considered in view of the seemingly unfounded allegations made in defendant's brief that trial counsel did not adequately represent defendant, but rather talked him into entering his plea.

Turning to the merits of defendant's objections, it is well settled that the burden is on the defendant to establish adequate grounds for the withdrawal of his plea of clear and convincing evidence. *State v. Reppin, supra.* Further, the trial court's exercise of its inherent power to grant or deny the motion will not be disturbed by this court unless it is shown that there has been an abuse of discretion. *State v. Koerner* (1966), 32 Wis. 2d 60, 64, 65, 145 N. W. 2d 157.

The defendant was eighteen years of age at the time in question, and the presentence report, which was considered and read into the record by the trial court, states that "[h]is intelligence appears to be below average but does not render him mentally defective." He had completed a tenth grade education and had some training as a mechanic. No evidence was introduced that defendant was mentally deficient or suffering from any mental illness, nor that he lacked the mental capacity to discuss and comprehend the effect of the court proceedings.

At the hearing on this motion, Attorney Bowman testified that in his opinion defendant was capable of and did, in fact, make an intelligent decision in choosing to enter his plea. The mere fact that a defendant is below

average in intelligence does not in and of itself render him incapable of understanding the proceedings against him or entering a guilty plea, particularly where, as here, he has had the benefit of competent and experienced counsel of his own choosing at all critical stages of the proceedings. Defendant has not sustained his burden of proof in establishing that his age or level of intelligence in any way affected the validity of his plea.

Defendant's second objection is that in accepting his plea the trial court failed to advise him of all the constitutional rights afforded to an accused, with the exception of his right to plead not guilty and to have a jury trial. He further argues that any presumption that his attorney had advised him of his rights and potential defenses has been rebutted by Attorney Bowman's own testimony at the postconviction hearing.

The procedure followed by the trial court in accepting defendant's plea was in substantial conformity with the guidelines suggested by this court in *State ex rel. Burnett v. Burke* (1964), 22 Wis. 2d 486, 494, 126 N. W. 2d 91. The following is a portion of the transcript of the proceedings which took place on November 22, 1968:

"*The Court:* Are we now prepared for an arraignment?
"*Mr. Bowman:* We are, Your Honor.
"*The Court:* Setting a date on this matter?
"*Mr. Bowman:* Yes, Your Honor.
"*The Court:* And what is the plea?
"*Mr. Bowman:* Guilty, Your Honor.
"*The Court:* Have you explained the consequences of a guilty plea to the defendant?
"*Mr. Bowman:* Yes, I have, Your Honor.
"*By the Court:*
"*Q.* Mr. Froelich, how old are you?
"*A.* Eighteen.
"*Q.* And how much education have you had?
"*A.* Tenth grade.
"*Q.* I may have gone over this before, but I will do so again. You understand that under the law you have a right to a trial by a jury on this matter and, also, to, naturally, enter a plea of not guilty?

"*A.* Yes.

"*Q.* And that those are very valuable rights which you possess?

"*A.* Yes.

"*Q.* You heard the statement by your attorney—that you desire to enter a plea of guilty to this offense?

"*A.* Yes, Your Honor.

"*Q.* Is that your wish?

"*A.* Yes.

"*Q.* You know what you are charged with here?

"*A.* Armed robbery.

"*Q.* Any other facet of the case that you are aware of—strike that. Is it just armed robbery?

"*A.* Masked armed robbery.

"*Q.* Armed robbery and concealing identity; is that correct?

"*A.* Yes.

"*Q.* Mr. Froelich, I want you to know that under the law, if the Court accepts your plea of guilty to this offense, that you are subjecting yourself to a possible term of not more than 35 years in a state institution; are you aware of that?

"*A.* Yes, Your Honor.

"*Q.* 30 years on the armed robbery and 5 additional years because of the condition of being masked and concealing identity. Knowing all of that, is it still your desire to enter a plea of guilty?

"*A.* Yes, Your Honor.

"*Q.* Have any promises been made to you or any threats been made against you in order to obtain a plea of guilty to this offense?

"*A.* No, Your Honor.

"*The Court:* All right. Mr. Hodan?

"*Mr. Hodan:* I'm satisfied, Your Honor.

"*The Court:* All right. The plea of guilty may be received. We would like to accord the defendant the opportunity for a speedy trial in this matter."

Admittedly, the trial court did not discuss the defendant's entire case with him and advise him of every right and potential defense which he might have had, but that was Attorney Bowman's job, not the trial court's. As this court stated in *State v. Strickland* (1965), 27 Wis. 2d 623, 631, 135 N. W. 2d 295:

". . . Courts have the right to assume in such a situation that counsel has fulfilled his duty of proper representation by fully explaining to the accused the nature of the offense charged, the range of penalties, and possible defenses thereto, and satisfying himself that the accused understands such explanations, before permitting the accused to authorize the entry of a plea of guilty. . . ."

The trial court was fully justified in relying upon Attorney Bowman's affirmative answer when asked if he had explained the consequences of a guilty plea to the defendant.

No evidence was presented at the postconviction hearing which would be sufficient to rebut this presumption. Attorney Bowman testified that he had reviewed the record of the case, the probable testimony against defendant and given him his evaluation of the case. He further testified that the decision on the plea had been discussed thoroughly, that defendant was advised of his rights and the probable consequences of either plea, and that in his opinion defendant made an intelligent decision to plead guilty. The fact that Attorney Bowman did not testify to the specific details of each conference he had with the defendant, or explain the reasoning behind every tactical decision that he made in handling the case certainly does not amount to clear and convincing evidence that his representation was inadequate or that defendant's plea was not knowledgeable. Further, it appears that in connection with the other charge that was dismissed that the defendant, with the advice of Mr. Bowman, persisted in his plea of not guilty and had discussed the calling of witnesses, including alibi witnesses. We are convinced that the defendant was adequately advised and represented.

Defendant's third objection is not that a plea agreement was made and violated but rather that he concluded that such an agreement had been made and relied on this conclusion in entering his plea. Defendant testi-

fied that he understood that he was going to be sentenced under the Youth Service Act and would be incarcerated for no more than two years at the most.

Defendant admitted that he never discussed any agreement with the court or the district attorney, and that he never heard his attorney discuss the matter with the district attorney. Attorney Bowman testified as follows:

"*Q.* Well, did Mr. Spindler in your conversations with him ever represent to you that if the defendant pleaded guilty that he would receive from the State certain concessions?

"*A.* Mr. Spindler informed me, and I informed Mr. Froelich, that he felt that there ought to be a term in prison; and no member of the District Attorney's staff ever made any other representation to me than that.

". . .

"Were any representations made by you to Mr. Froelich concerning the fact that if he plead guilty that you would make sure that he'd get in under the Youth Service Act for purposes of sentencing?

"*A.* No. I told him that this was the argument that I would make, and I think on the day of the guilty plea the file should show that I asked the Court at the end of that hearing to consider sentencing him under the Youth Service Act.

"*Q.* You never made any representations then to Mr. Froelich that he would receive a certain sentence by virtue of pleading guilty under the Youth Service Act?

"*A.* No. I told him that I would work as hard as I could to convince the Court and the District Attorney that this would be an appropriate alternative.

". . .

"*Q.* And at the time that he entered his guilty plea, did you advise him of the reasonable probability that he would get a large prison term?

"*A.* I simply advised him that that would be up to the Court, but I think I felt that his conduct from October on with regard to this might have some influence with the District Attorney's office and with the Court and that I was hopeful that the Probation Department and the psychiatrists who examined him might be of some assistance to us. I never told him that any District

Attorney or any Judge had made any promises to me at all, because no promises were ever made to me, with the single exception of dismissing that Case G–6967.

"*. . .*

"*Q.* Did you at any time tell Mr. Froelich that he would probably get the Youth Service Act for two years?

"*A.* No. I told him I'd work as hard as I could to get that for him, to prove that the Youth Service Act applied here, either on a mandatory basis if I could find a letter to the Government.

"*The Court:* Did you promise him that you could get it for him?

"*The Witness:* No, Judge, I did not. I told him I'd work as hard as I could to demonstrate that that—this statute applied."

It appears, then, that no plea agreement had ever been made, and that no one, with the exception of defendant, as a postconviction afterthought, claims that one had. The credible evidence clearly supports the conclusion that defendant knew or should have known that a sentence under the Youth Service Act was only a possible alternative which his attorney was pursuing. The record shows that Attorney Bowman did attempt to convince the district attorney that such a disposition would be appropriate, argued the matter before the court, and presented a written brief dealing with the Act for the court's consideration.

A somewhat similar situation was presented in *Le Febre v. State* (1968), 40 Wis. 2d 666, 162 N. W. 2d 544. There, the argument was made on appeal that the defendant thought a plea agreement had been made and relied on this erroneous conclusion in entering his plea. The evidence presented on the motion to withdraw supported the conclusion that the defendant knew or should have known what the actual status of the plea bargain was. While noting that it was impossible to determine whether or not the defendant actually knew that the plea bargaining never ripened into an agreement, this

court stated that the ultimate decision did not rest on that question. Rather, the court held that:

"What this case does turn on is the interpretation given to the American Bar Association standard quoted earlier:

" '(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.'

Before the defendant can prevail in his appeal, the court must hold that the defendant's conception of the plea agreement will be binding on this court. Quite obviously, this should not be the rule. Besides adopting the minimum standards of the American Bar Association in *State v. Reppin, supra,* this court reaffirmed the evidentiary standard for the withdrawal of guilty pleas.

" '. . . the accused seeking to withdraw his guilty pleas has the burden of showing adequate grounds for withdrawal. . . . This burden is the clear and convincing evidence test and such burden is in accord with the rule in other jurisdictions. . . .' *State v. Reppin, supra,* at pages 384 and 385.

If it is going to be permissible to withdraw a guilty plea because a plea agreement was violated, the first element which the accused should have to prove is that a plea agreement was actually made. This could not be shown in this case. Thus the defendant's contention of a 'manifest injustice' fails for lack of proper proof." (p. 672)

The argument was also made in *LeFebre* that since the defendant was mistaken about the plea agreement, his plea was based on an ignorance of the facts and therefore entered inadvertently. In rejecting this contention, the court cited *Pulaski v. State, supra,* wherein it said at pages 672 and 673:

" 'If the defendant entered the plea of guilty with the hope and expectation or belief that either the punishment to which he might be exposed would be mitigated and the out-of-county charges would also be consolidated

so he could also plead guilty to them, those hopes, expectations, or beliefs, even though induced by his counsel or others, or as a consequence of misinterpretation of things said to him, normally would not constitute a ground for the exercise of the discretion necessary to permit the plea of guilty to be withdrawn. . . . The defendant has shown no deal was made to consolidate all charges against him in exchange for his plea of guilty and co-operation.' *Pulaski v. State, supra,* at pages 147 and 148."

In the instant case defendant has not established that any agreement was made, or that he was in any way misled by his attorney. He has not shown any manifest injustice in accepting his plea of guilty.

The defendant, through his appointed present counsel, also contends that objections to several questions asked of Attorney Bowman by his then retained counsel representing him at the time of his motion to withdraw his plea were erroneously sustained. We have examined the transcript of that proceeding thoroughly and reject this argument for three reasons—one, some of the questions were not objectionable, two—no offer of proof was made, and three—most importantly, the rulings even if in error were not prejudicial. Counsel for the defendant was allowed a wide latitude in her questions. Mr. Bowman was permitted to and did testify to all material and relevant matters at one time or another during his examination. The defendant has not been prejudiced by virtue of the fact that objections were sustained to some of the questions asked of Mr. Bowman.

*By the Court.*—Order affirmed.