CHRISTIAN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 61. Argued March 2, 1972.—Decided March 28, 1972.*
(Also reported in 195 N. W. 2d 470.)

448

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. Two accounts are given in this record as to who murdered Angelia Stevens. One account was testified to at the preliminary hearing in this case by Earl Schmidt, who was a passenger in defendant's car with defendant and Angelia prior to the murder. It had defendant stopping the car, directing Angelia to step out, and shooting her three times. The second account is contained in defendant's confession, introduced by defendant's trial counsel before sentencing. It had defendant stopping the car with Schmidt and Angelia stepping out of the car, and Schmidt shooting the girl three times. Except for complete disagreement as to who pulled the trigger, both accounts are in substantial agreement as to events leading up to and following the deliberate murder.

On the night of the murder, defendant was driving his own automobile, a loaded .22-caliber rifle under the front seat. Three other young people—Mike Kolbow, Earl Schmidt and Angelia Stevens—were in the car. There had been earlier discussions between Schmidt and the defendant about "killing their enemies." Schmidt, according to admissions made by the defendant, started playing with a blank pistol, pretending to put a bullet in it, aiming it at Angelia, and pulling the trigger. According to the defendant, after several minutes of doing this, Schmidt reached under the seat, took out the rifle, and said to defendant, "I'll bet you $50 I can do it." Mike Kolbow interrupted to say, "No, not her. What did she ever do? Not a girl." Angelia said, "I want to go home." Defendant asked, "Who wants to go home first?" Mike

Kolbow said, "If you're not going to take her home, take me home first." On the way to Kolbow's home, according to defendant, Schmidt said, "I know I could do it." Kolbow left the car at his home, telling Schmidt, "If you guys do anything, I won't say anything."

Defendant then drove to Rusch Road, saying to Schmidt as they were driving onto Rusch Road, "How are your guts holding out?" According to the defendant, Schmidt told him to stop the car and said to Angelia, "Angie, get out of the car, I want to talk to you." She said, "No, you are going to make me walk to town." According to the defendant, Angelia and Schmidt, with the defendant's rifle, got out of the car. As defendant started to get out of the car, he heard a shot and Angelia saying, "Schmitty, no." Schmidt, according to defendant, told defendant to get back in the car and move it ahead. Defendant moved the car ten feet, and heard another shot. As Schmidt got back into the car, another automobile turned onto Rusch Road and Schmidt shouted, "Come on, let's go, let's get out of here." He said, "I shot her three times, the first one was in the forehead."

Both the Schmidt testimony at the preliminary and defendant's confession agree that the two then proceeded to dispose of the murder weapon by throwing it into a nearby river. According to the defendant, Schmidt said, "Let's bury the gun or throw it in the river." Defendant said, "Let's throw it in the river." Defendant then drove the car to a spot on the river where there was a hole in the ice that he knew of. Defendant said he stopped the car there and Schmidt threw the gun and bullets into the river. No motive for the crime was spelled out, although there is reference in the record to defendant and Schmidt questioning Angelia about a girl friend of defendant who was suspected of dating other men.

The claim of right to withdraw the plea of guilty or set aside the conviction is based on four contentions: (1) Expectation; (2) protestation; (3) foundation; and (4)

the information. Each is entirely separable, and each will be separately considered.

*Expectation.* Defendant's claim is that he was led to believe that the district attorney would, following his plea of guilty to second-degree murder, recommend a sentence of two years. This is not a claim that the district attorney had agreed, in exchange for the plea of guilty, to make such recommendation, and therefore should be held to the bargain he made.[1] It could not be. The district attorney stated on the record that no promises had been made.[2] Defendant's trial counsel, on the record, confirmed that no promises of any kind had been made.[3] The defendant, on the record, stated that no promises concerning disposition of the case had been made.[4] The right to withdraw a plea because a plea agreement was violated requires a defendant to prove both the existence of the agreement and the fact of violation.[5] Here, as to sentence or disposition of the case, there was neither.

[1] *See: Santobello v. New York* (1971), 404 U. S. 257, 92 Sup. Ct. 495, 30 L. Ed. 2d 427, vacating a one-year sentence because the prosecution broke its promise not to make a recommendation as to sentence.

[2] *"Mr. Callahan* [the district attorney]: The filing of the amended information is a result of a conference between defendant's counsel and myself with no promises of any kind made."

[3] *"Mr. Strub* [defense counsel]: I have counseled with my client in reference to that plea. It's my understanding from my conferences with him that he understands the plea that he is making and we have gone over the matter together. The statement made by the district attorney pro tem in references to any promises, any other representations, as he has indicated, are true and correct."

[4] *"The Court:* Has anyone in the course of all these proceedings made any promises to you concerning any disposition which the court may make in your case?

*"The Defendant:* No."

[5] " 'If it is going to be permissible to withdraw a guilty plea because a plea agreement was violated, the first element which the accused should have to prove is that a plea agreement was actually made' . . ." *State v. Froelich* (1971), 49 Wis. 2d 551, 563, 182 N. W. 2d 267, citing *LeFebre v. State* (1968), 40 Wis. 2d 666, 162 N. W. 2d 544.

Here the defendant's claim is that he was misled into
believing that the district attorney had agreed to recom-
mend a sentence of two years by a letter sent by defend-
ant's trial counsel to defendant's parents. So the claim
is one of incompetency of counsel, incompetency to be
found on the basis of the wording of a letter. The sen-
tences referred to in the letter involved read as follows:
"We have had several conferences with Attorney Calla-
han, district attorney pro tem, on October 8, 1969. . . .
We will make a plea and propose to ask Judge Gergen to
place Melvin on probation for a period of five years; or,
in the alternative, a sentence of two years plus three
years of probation."

Lawyers, on occasion, share with most editorialists and
some newspaper columnists a propensity to use the word
"we," in the so-called editorial sense or meaning, as an
exact synonym for the singular pronoun "I." The sole
member of a small-town newspaper editorial staff is
prone to say, "We think . . ." when recording a thought
that has occurred to him alone. Such avoiding of a first-
person reference can be confusing, but not here. The
first use of the word "we" in the letter states, "We
have had several conferences with Attorney Callahan,
district attorney pro tem." The reference is to defense
counsel's conferring with a someone else. Where that
someone else is the district attorney, there is no basis for
concluding that the "we" does or could include the
"D. A.," the person conferred with. There is no basis or
reason for finding the second reference to "we" to mean
anything different than it did when first used or to in-
clude someone specifically excluded in the first use of the
pronoun. We do not go further with cases setting the
standard for reversals or withdrawals of plea based on
claimed incompetence of trial counsel,[6] for the reason
that we find no substance to the interpretation now given

[6] *See: Ernst v. State* (1969), 43 Wis. 2d 661, 669–671, 170 N. W.
2d 713.

the letter by the defendant and no basis for any claim of trial counsel inadequacy.

*Protestation.* Defendant claims that his plea of guilty should not have been accepted by the trial court because he made, not himself but through his attorney, a protestation of innocence. In point of fact, the colloquy between trial court and defense counsel referred to took place at the time of sentencing, not of entry of plea. The dialogue went as follows:

"*The Court:* . . . Do you say that the statement which you have read to the court foursquares in all material details with the statement, although somewhat limited, which he gave on the witness stand?

"*Mr. Strub* [defense counsel]: Fairly substantially, yes.

"*The Court:* Of course, there was no talk about killing Angelia Stevens in Christian's testimony beforehand, was there?

"*Mr. Strub:* As I recall, some reference was made.

"*The Court:* . . . I mean might have been some reference by way of oblique, but there was no admission by Melvin Christian that he had any pre-knowledge of an intent to murder.

"*Mr. Strub:* He contends as of this date that he had no intent.

"*The Court:* That Schmidt had an intent?

"*Mr. Strub:* That Schmidt had an intent.

"*The Court:* And that he knew about it?

"*Mr. Strub:* But he didn't think Schmidt was serious.

"*The Court:* And such is his statement even today?

"*Mr. Strub:* Yes.

"*The Court:* Then he is a chauffeur, I take it, in accordance with his evidentiary statement, at least, who believed that Schmidt was going out there to have some fun with Angelia with the gun?

"*Mr. Strub:* And to scare her.

"*The Court:* And to scare her. All right. Thank you, Mr. Strub." ·

Into this exchange of statements, and it alone, post-conviction counsel reads a protestation of innocence or

denial of guilt. To do so he assumes an intent to kill on the part of defendant or knowledge of intent to kill on the part of Schmidt is a prerequisite to conviction. Intent to kill is not an element of second-degree murder. What is required for plea or finding of guilt is that there be established ". ... conduct imminently dangerous to another and evincing a depraved mind, regardless of human life." [7] Even standing alone, the colloquy has the defendant, following talk or hardly oblique references to killing Angelia Stevens, driving her and his partner to a remote location so that the partner could, using defendant's loaded rifle, "have some fun with Angelia with the gun . . . and to scare her." However, the dialogue does not stand alone. Before the court, at the time of sentence, was also the testimony at the preliminary hearing, the handwritten confession of the defendant (introduced by defendant's counsel prior to sentencing), and the evidentiary statement given by defendant from the witness stand.[8] In entering a finding of guilt and imposing sentence, the trial court was entitled to take into consideration the entire record before him. Even if the statements of defense counsel at the time of sentencing had amounted to a denial of guilt, the trial court was entitled to consider evidence which negated such statement of denial. Here there was no denial of an essential element of the

[7] Sec. 940.02, Stats.

[8] Additionally, in this case the district attorney read into the record the results of a polygraph test, given the defendant, showing or reporting the following answers to the following questions to be truthful:

"Q. Did you know, suspect when you got onto Rusch Road that Angie might be or was going to be shot?

"A. Yes.

". . .

"Q. Did you say anything to egg on Earl Schmidt to shoot Angie by saying you wouldn't do a thing like that, a remark meaning the same thing?

"A. Yes."

crime and there was ample evidence to sustain the finding and sentence.

*Foundation.* Challenge is raised by postconviction counsel to the factual basis for the plea of guilty to the charge of second-degree murder. The claim is not that the defendant did not understand the charge [9] and situation.[10] The claim is that the trial judge did not ". . . personally determine 'that the conduct which the defendant admits constitutes the offense charged in the . . . information . . .'" as required by the *Ernst Case.*[11] (The plea here was taken ten days after the *Ernst* decision was handed down and before it was distributed in printed form." The mandate of *Ernst,* this court has made clear, is ". . . as to the end result which the trial court must achieve . . . but the precise means by which it does so have been left largely to its own discretion."[12] At the hearing on defendant's motion for withdrawal of guilty plea, on the issue of a factual basis for receiving the plea of guilty, the trial court referred to the fact that ". . . the voluminous transcript of the preliminary was in the case file and the judge had already heard all available evidence in the Schmidt case." The preliminary hearing record did show the critical facts of the case, but alone it would not have been enough.

---

[9] *"The Court:* Do you say that you fully understand the nature of this crime, particularly in that it involves a guilty mind, either that you did the act yourself or that you were a party to this crime?

*"The Defendant:* Yes."

[10] *"The Court:* Do you say that you fully understand the entire situation after consulting with your counsel and telling him everything that you think is important in the case, all the facts that you can remember, and receiving his advice and counsel? Do you feel that you fully understand the situation in which you find yourself?

"The Defendant: Yes."

[11] *Ernst v. State, supra,* at page 674.

[12] *Martinkoski v. State* (1971), 51 Wis. 2d 237, 245, 186 N. W. 2d 302.

The trial court's reference to having heard "all available evidence" relates to his having tried the case of first-degree murder brought against Earl Schmidt. There the then defendant, Earl Schmidt, had testified, as he did at the preliminary hearing here, that the defendant here had shot and killed Angelia Stevens, and, apparently, the jury believed his account for he was acquitted by jury verdict. Also, in the Schmidt trial, the defendant here, Melvin Christian, had testified in great detail stating the fact to be that Earl Schmidt had fired the bullets that killed Angelia Stevens. His testimony in the Schmidt case paralleled his handwritten statement as to the extent and degree of his involvement in the series of events leading up to the murder and including the disposing of the murder weapon. While judicial notice is usually not to be taken of the records in another case,[13] it is not required that the evidence before the court at the time of a hearing to insure the accuracy of a plea of guilty ". . . be admissible at trial or that it be sufficient to convict beyond a reasonable doubt."[14] The inquiry should be of such a nature as will satisfy the judge there is a factual basis for the plea.[15] There is no suggestion here that the defendant was unaware of the nature of the charge, or that he did not understand the nature of the charge when he made his plea. When defendant's counsel introduced the handwritten confession of the defendant into the record, it merely repeated what the trial court had heard from the lips of the defendant in the Schmidt trial. We are not to upset the factual findings of the trial court unless they are contrary to the great weight and clear preponderance of the record,[16]

[13] See: State v. LaPean (1945), 247 Wis. 302, 308, 19 N. W. 2d 289.

[14] Edwards v. State (1971), 51 Wis. 2d 231, 236, 186 N. W. 2d 193.

[15] Id. at page 236.

[16] ". . . And when the trial court has heard the evidence presented on a motion to withdraw a plea of guilty this court will not

and with the purpose of a postplea inquiry being to "insure the accuracy of the plea," [17] we would hold that the trial court here possessed sufficient facts and made sufficient inquiry to satisfy itself that the acts admitted constituted the crime committed. As this court has stated, a plea of guilty may be withdrawn ". . . upon a showing its withdrawal is necessary to correct a manifest injustice, but this showing must be established by clear and convincing evidence." [18] Here the defendant entered his plea of guilty to the reduced charge of second-degree murder ". . . voluntarily, understandingly with aid of counsel, and without threats or any promises. . . ." [19] With the testimony at the preliminary hearing establishing probable cause that he was guilty of first-degree murder, his handwritten confession paralleling his testimony in the earlier Schmidt case and evidentiary statement in this case at the time of sentencing, and the results of the polygraph test before the trial court at time of sentencing, we see no basis for holding that any "manifest injustice," has here occurred. So we uphold the trial court denial of motion to withdraw the plea of guilty.

*The information.* The defendant, by postconviction counsel, contends that the proceedings in this case are a nullity because the information ". . . failed to allege an essential element of the offense of second-degree murder." The reference is to the language of the information reading: ". . . said defendant, Melvin Christian, did cause

---

upset the factual findings of the trial court unless they are contrary to the great weight and clear preponderance of the evidence." *Martinkoski v. State, supra,* at page 243.

[17] "The purpose of a postplea inquiry is to insure the accuracy of the plea by determining whether the facts, if proved, constitute the offense charged and whether the defendant's conduct does not amount to a defense." *Edwards v. State, supra,* at page 236.

[18] *Griffin v. State* (1969), 43 Wis. 2d 385, 389, 168 N. W. 2d 571.

[19] *Id.* at page 389.

the death of another human being, to wit: Angelia Stevens, by conduct imminently dangerous and evincing a depraved mind . . . ." The language of the second-degree murder statute is: "Whoever causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life. . . ." [20] Defendant's exact contention, as stated in his brief on appeal, is that: "There is a fatal deficiency in the above-quoted charge, because, while it alleges that the defendant caused the death of Angelia Stevens 'by conduct imminently dangerous,' it fails to refer to such conduct as being 'imminently dangerous to another;' . . ."

It is correct, as postconviction counsel points out, that this court has held that, if the insufficiency in a complaint or information ". . . is of such a nature that no crime known to law has been alleged the defect is jurisdictional . . . ." [21] We do not put the abbreviation of the statutory language or omission of the phrase "to another" in such category. Both the statute and the information here relate to the causing of the death "of another human being." Counsel on appeal suggests that one might drive a jeep or tractor into a herd of sheep or goats, and such conduct would be "imminently dangerous," but only to sheep or goats, not to "another human being." But where the charge is that of causing the death of a human being, the subsequent reference to conduct "imminently dangerous" clearly relates to danger to other persons, not to domesticated farm animals. Actually, we would view the reference "to another" in the statute, closely following the reference to causing the death "of another human being" as very nearly redundant. Certainly the omission of the two words "to another" does not remove any essential element of the crime of second-degree murder,

[20] Sec. 940.02, Stats.
[21] *State v. Lampe* (1965), 26 Wis. 2d 646, 648, 133 N. W. 2d 349.

and that is the test.[22] We see the omission of "to another" as no more than a defect or imperfection in a matter of form which did not prejudice the defendant and does not render invalid the information.[23] If it were to be considered more than such imperfection in form, it not being jurisdictional in reach or substance, it would be an insufficiency to which objection must be raised before trial or deemed waived.[24] No objection was here raised, and it is too late to raise the objection now, if, indeed, any basis for objecting ever existed.

*By the Court.*—Order affirmed.

---

[22] ". . . It is not necessary to charge a crime in the exact words of the statute; if the substance of all the elements of the crime is alleged, that is sufficient. . . ." *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 354, 355, 159 N. W. 2d 25.

[23] *See:* Sec. 955.14 (3), Stats. 1967, providing: ". . . No indictment, information or complaint shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which does not tend to the prejudice of the defendant." (Now sec. 971.26, Stats., and essentially the same wording.)

[24] *See:* Sec. 955.09 (3), Stats. 1967, now sec. 971.31 (2), providing: ". . . defenses and objections based on . . . insufficiency of the information . . . must be raised before trial by motion or be deemed waived. . . ."