513 P.2d 1278

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Gino Lee MADRIGAL, Defendant-Appellant.**

**No. 1117.**

Court of Appeals of New Mexico.

July 25, 1973.

Certiorari Denied Aug. 24, 1973.

Robert N. Singer, Coors, Singer & Broullire, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., Harvey B. Fruman, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Convicted of aggravated assault after a plea of guilty, defendant appeals. Section 40A–3–2, N.M.S.A.1953 (2d Repl.Vol. 6). The issues are: (1) jurisdiction of the district court because defendant was a juvenile; (2) competency to plead; (3) validity of the guilty plea; and (4) whether the sentence imposed was an abuse of judicial discretion.

*District court jurisdiction because defendant was a juvenile.*

A petition was filed with the juvenile court charging defendant, then 17 years old, with matters which, if committed by an adult, would be felonies. A motion was filed asking that defendant be transferred to the district court "for proper criminal proceedings." Defendant, his father and his court appointed attorney appeared at the hearing on the transfer motion.

The events giving rise to the charges against defendant occurred in February, 1972. The transfer hearing was held in March, 1972. The applicable statute was § 13–8–27, N.M.S.A.1953 (Repl.Vol. 3).[1] This section provides in part:

"* * * if any child fourteen [14] years of age or older is charged in juvenile court with an offense which would be a felony if committed by an adult, and if the court after full investigation deems it contrary to the best interests of such child or of the public to retain jurisdiction, the court may in its discretion certify such child for proper criminal proceedings. * * *"

Defendant claims that no order was entered transferring him to the district court for criminal proceedings. See Trujillo v. Cox, 75 N.M. 257, 403 P.2d 696 (1965).

---

1. Section 13–8–27, supra, was repealed by Laws 1972, ch. 97, § 71, effective July 1, 1972. For present law, see § 13–14–27, N.M.S.A. 1953 (1972 Int.Supp.).

This is factually inaccurate. The transfer order appears in the record.

Defendant also asserts there was no "full investigation" as required by § 13–8–27, supra. Absent such a full investigation, he claims he has been denied the essentials of due process which, he asserts, apply under Kent v. United States, 383 U. S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and Peyton v. Nord, 78 N.M. 717, 437 P.2d 716 (1968). On the basis of the asserted denial of due process, defendant claims the trial court was without jurisdiction.

The claim of no full investigation is based on remarks of the assistant district attorney concerning defendant's prior juvenile record. Defendant's counsel took issue with the remarks concerning this record. After defendant was transferred to district court, his counsel moved that the grand jury indictment be quashed and the matter be sent back to the juvenile court. This motion alleged that at the juvenile court transfer hearing " * * * there were no witnesses, no sworn testimony, and no evidence nor was the defendant given the opportunity to confront or cross-examine those persons whose unsworn testimony may have been the basis for the transfer order. * * * " Counsel did no more than repeat these grounds when the motion was argued and denied by the trial court.

The transfer order was entered after the juvenile judge stated: "I believe the official Probation File, which is No. E–7743, should be a part of this record, which I assume is where you got your information." The assistant district attorney agreed that this was the source of his information.

This probation record is a part of the record before us for review. Its contents suggest defendant committed several crimes, all of which were felonies. These crimes were the basis for the juvenile proceedings. This record includes a statement made by defendant after being advised as to his rights and signed by defendant in the presence of his father. This statement provides a factual basis for the charges.

The probation record contains a statement of the victim and photographs of the victim indicating the extent of the beating administered by defendant. The record contains the investigative report of police officers. The probation record indicates, prima facie, a full investigation, not only of the matters leading to the juvenile proceedings but of defendant's past conduct. There is nothing in the record indicating an absence of a full investigation and counsel has not suggested what element, if any, of a full investigation is lacking.

The essence of defendant's complaint goes to the procedure at the transfer hearing. It is true that the transfer proceedings were informal. No witnesses were called or sworn. We do not reach the question of what is required at a transfer hearing because defendant had no objection to the procedure followed. His only objection was to the characterization of his prior record by the assistant district attorney. Defendant did not object to the inclusion of the probation record as a part of the record at the transfer hearing. Defendant did not offer any witnesses and did not ask for sworn testimony concerning the contents of the probation record.

In these circumstances, defendant waived any deficiency in the "full investigation" and in the procedure followed at the hearing resulting in the transfer order. State v. Snow, 84 N.M. 399, 503 P.2d 1177 (Ct.App.1972); State v. Raines, 78 N.M. 579, 434 P.2d 698 (Ct.App.1967).

*Competency to plead.*

The claim is: "Although the question of Appellant's mental and emotional state was repeatedly raised, and a judicial determination of his competency requested * * * no hearing was ever had, nor was any disposition effected, upon such questions. * * * " The claim is factually inaccurate.

On April 18, 1972, defendant's counsel orally asked the court to authorize a psychiatric examination. In so doing counsel stated: " * * * I'm not suggesting, I'm

not going to amend my plea and enter a plea of not guilty by reason of insanity, I don't think we have anything like that. * * *" Counsel sought the psychiatric examination in connection with defendant's intent at the time of the alleged commission of the several crimes charged. The trial court denied the motion at the time and informed counsel it could be brought up at a later time.

On May 11, 1972, counsel again moved for a psychiatric examination alleging " * * * on information and belief, it appears to such attorney that the Defendant is deeply, emotionally, and psychologically disturbed and that there is a reasonable possibility that a defense may exist to the crimes charged in the Indictment based upon the present mental state of the Defendant."

■ Counsel's statement in connection with the April 18th motion negates any claim of incompetency. The May 11th motion asserts no more than possibilities. Neither of these motions raised a question as to defendant's mental capacity. State v. Hovey, 80 N.M. 373, 456 P.2d 206 (Ct. App.1969).

A motion for judicial determination of competency was filed May 31, 1972. The determination sought was " * * * the competency of the Defendant to stand trial." The three grounds alleged in support of this motion were: (1) "The Defendant has had a long history of emotional and mental disturbances for which he has been committed to the New Mexico State Hospital." (2) "Defendant has recently been examined by Dr. A. A. Hovda, a New Mexico Psychiatrist who has indicated to the Defendant's attorney that further testing and evaluation will be necessary for him to determine whether the Defendant is presently competent. * * *" (3) Defendant has had three attorneys in this case, each of which is convinced that defendant is suffering from mental and emotional disturbances.

In regard to the three grounds alleged, the record shows the following. The examination at the New Mexico State Hospital was in 1969. The report of that examination was that defendant was emotionally disturbed and was experiencing a "profound depressive reaction." The report recommended further examination and observation; the report did not state that defendant was mentally incompetent. A report of Dr. Hovda dated June 6, 1972, (subsequent to the motion), does not recommend further examination and testing. Rather, the report refers to two evaluations, recommends psychiatric treatment with medication and states an opinion that defendant was "pre-psychotic at this time." The claim that three attorneys thought defendant to be emotionally disturbed is not supported by the record. Assuming, however, that this was the opinion of three attorneys, there is nothing showing a basis for the opinion.

We have serious doubts that under this record a "question" as to defendant's present mental competence had been raised under § 41–13–3.1, N.M.S.A.1953 (2d Repl. Vol. 6). Here, there is no conflict in opinion as to defendant's mental condition as in State v. Cliett, 79 N.M. 719, 449 P.2d 89 (Ct.App.1968). Nor was he hospitalized for mental illness when arrested as in Hoffman v. State, 79 N.M. 186, 441 P.2d 226 (Ct.App.1968). Compare the factual allegations in State v. Guy, 79 N.M. 128, 440 P.2d 803 (Ct.App.1968); see also State v. Velasquez, 76 N.M. 49, 412 P.2d 4 (1966), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 95 (1966).

In the light of the record, the motion for a judicial determination of competency rests on a history of emotional disturbance continuing into the present. We incline to the view that this is insufficient to raise a question as to present mental incompetency. See State v. Smith, 80 N.M. 742, 461 P.2d 157 (Ct.App.1969); compare Stafford v. State, 82 N.M. 365, 482 P.2d 68 (Ct. App.1971); State v. Maples, 82 N.M. 36, 474 P.2d 718 (Ct.App.1970).

We do not, however, decide this issue on the basis of whether the motion raised a

question as to defendant's present mental competence. Instead, we follow the approach used in State v. Bius, 85 N.M. 98, 509 P.2d 573 (Ct.App.1973). In *Bius,* supra, at the time of the guilty plea, counsel affirmatively represented to the trial court that defendant was competent to plead. This affirmative representation occurred after defendant had sought and obtained a court ordered psychiatric examination. The result of the examination was not in the record.

Here, we do not have an affirmative representation by counsel. We do have the result of the examination; the report does not indicate defendant was not competent to plead. At the time of the plea, no issue was raised as to defendant's competency. Counsel requested a pre-sentence report and stated: " * * * There are extenuating circumstances in his background and his emotional state * * *" of which the court should be aware before imposing sentence. The motion seeking a judicial determination of competency had been filed but was not brought to the attention of the trial court.

Defendant does not claim that he lacked the capacity to plead guilty. His claim is that the trial court erred in failing to judicially determine his mental competency. The context of this contention is that the motion was never called to the court's attention and no ruling was invoked. Prior opinions indicate that an issue as to defendant's mental competency may still be litigated, see State v. Guy, supra, but they do not support the view that a trial court errs in failing to decide an issue on which a ruling has not been invoked.

■ Defendant knew his motion for a judicial determination of his present mental competency was pending, but he did not point this out to the trial court. The trial court did not err in failing to judicially determine defendant's present mental competency when the matter was never brought to its attention. State v. James, 76 N.M. 376, 415 P.2d 350 (1966); State v. Duran,

80 N.M. 406, 456 P.2d 880 (Ct.App.1969); compare Atol v. Schifani, 83 N.M. 316, 491 P.2d 533 (Ct.App.1971).

*Validity of the guilty plea.*

■ Defendant asserts the trial court erred in failing to question defendant concerning his understanding of the consequences of his guilty plea before accepting the plea. This claim was not raised in the trial court; it is raised here for the first time. It is not before us for review. Neller v. State, 79 N.M. 528, 445 P.2d 949 (1968); State v. Vigil, (Ct.App.), 85 N.M. 328, 512 P.2d 88 (1973).

*Sentencing—judicial discretion.*

On June 8, 1972, defendant pled guilty to aggravated assault and a nolle prosequi was entered as to other charges. On June 26, 1972, the trial court orally sentenced defendant to a fourth degree felony penitentiary term and asked the district attorney's office to check into the possibility of part of this sentence being served in Springer [New Mexico Boys School at Springer, § 42–4–1, N.M.S.A.1953 (2d Repl.Vol. 6)]. This could not be done. Section 40A–29–13, N.M.S.A.1953 (2d Repl.Vol. 6). The sentence on June 26, 1972, was never entered of record.

On June 29, 1972, the trial court sentenced defendant to not more than sixty days in the penitentiary "for the purposes of diagnosis and report." See § 40A–29–15(C), N.M.S.A.1953 (2d Repl.Vol. 6). The trial court remarked it had " * * * a good pre-sentence report * * *" and desired the diagnostic report because " * * * I think that I need this in this case. * * *" " * * * [W]e will see what happens after I get the results of these tests."

On September 7, 1972, defendant again appeared before the court in connection with his sentence. The diagnostic report was favorable to defendant. The report recommended that defendant be placed on probation on the condition that defendant be accepted by DARE (Drug Addict Reha-

bilitation Enterprises) on a residential basis.

The trial court was concerned about three things. One, that DARE was a program concerned with addicts, "and you are not that, Mr. Madrigal." Second, nothing in the pre-sentence and evaluation reports considered the victim of defendant's crime. Third, just before the crime was committed, defendant had enlisted in the Army. The trial court sentenced defendant to not less than one nor more than five years in the penitentiary, adding that defendant would be committed to the penitentiary on September 15, 1972, unless defendant's attorney furnished the court with two things —a statement from the victim that she did not wish the matter pursued further and a statement that the Army would accept defendant. Although not included in the formal order, the trial court remarked that if the two statements were furnished " * * * I will then go back and dismiss these charges. * * *"

Defendant did not meet one of the conditions—the statement from the victim. He was unable to contact the victim because she was no longer in the State. On September 18, 1972, the trial court sentenced defendant to the statutory penitentiary term for a fourth degree felony, giving defendant credit for pre-sentence confinement.

Defendant contends this sentence was in error because the sentence was the "most drastic" sentence available to the trial court. Defendant claims we should adopt a rule requiring the sentence to be the "least drastic" within the sentencing alternatives available to the judge. He claims the error was an abuse of judicial discretion amounting to denying defendant equal protection and due process of law.

■ In considering this contention two things should be noted: (1) Defendant had pled guilty. The trial court had no authority to dismiss the charge. State v. Raburn, 76 N.M. 681, 417 P.2d 813 (1966). Its authority was to sentence defendant in accordance with law. (2) The sentence imposed was authorized by law. Section 40A–29–3(D), N.M.S.A.1953 (2d Repl.Vol. 6).

Defendant recognizes that the sentencing alternatives available—a suspended or deferred sentence—were within the discretion of the trial court. State v. Serrano, 76 N.M. 655, 417 P.2d 795 (1966). Defendant claims judicial discretion was abused in this case because of defendant's age; because it was a first offense; and because the sentence is contrary to the psychiatric evaluation, the pre-sentence report and the diagnostic report.

■■ Judicial discretion is a discretion " * * * guided by law, caution, and prudence; it is an equitable determination of what is just and proper under the circumstances." State v. Alaniz, 55 N.M. 312, 232 P.2d 982 (1951). It is " * * * not a mere whim or caprice, but an honest attempt, in the exercise of power and duty, to see that justice is done. * * *" Independent Etc. Co. v. N.M.C.R. Co., 25 N. M. 160, 178 P. 842 (1918). Judicial discretion is abused if the action taken is arbitrary or capricious. See State v. Serrano, supra.

■ We cannot say the sentence in this case was arbitrary or capricious. It is in accordance with law. We cannot say it was unjust or improper in the circumstances because recommendations for a more lenient sentence were not followed. State v. Hogan, 83 N.M. 608, 495 P.2d 388 (Ct.App.1972). Nor can we say that the trial court acted from whim or caprice in imposing the statutory sentence on a seventeen year old first offender.

■ The situation here is one where we do not know all the factors considered by the court in sentencing as it did. We do know the court was concerned with the recommendation that defendant be placed in the care of DARE, and that the sentence was imposed for "this type of offense." What other factors were considered we do not know. In this situation we cannot say that the court did not attempt

to serve both the ends of justice and the best interests of the public as well as the defendant in sentencing as it did. Section 40A–29–15, N.M.S.A.1953 (2d Repl.Vol. 6). On the record before us, we cannot say there was an abuse of judicial discretion. State v. Serrano, supra; State v. Hogan, supra; State v. Dodson, 83 N.M. 11, 487 P.2d 921 (Ct.App.1971); State v. Follis, 81 N.M. 690, 472 P.2d 655 (Ct.App.1970).

The judgment and sentence is affirmed. It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissented and filed opinion.

SUTIN, Judge (dissenting).

I dissent.

On June 8, 1972, defendant, 17 years of age, pleaded guilty to aggravated assault, a fourth degree felony. Section 40A–3–2(C), N.M.S.A.1953 (2nd Repl.Vol. 6). This was his first serious conviction. He became 18 years of age August 21, 1972.

A. *Conditional statutory judgment and sentence is void.*

On September 7, 1972, defendant, who had enlisted in the Army, appeared for sentencing and pleaded for a chance to better himself. Defendant's attorney stated the female victim involved did not want to testify against defendant.

The trial court orally announced he would dismiss the charges on two conditions: (1) a statement from the female victim that she did not wish to pursue this matter and (2) an agreement from the Army that it would take him. Newman, Conviction, The Determination of Guilt or Innocence Without Trial, at 135, says:

In some instances the court enters a finding of not guilty, even though the defendant has freely offered a plea of guilty to the charge.

\* \* \* \* \* \*

An acquittal after a guilty plea has been offered is perhaps the clearest illus-

tration of the exercise of this type of judicial discretion.

However, on September 11, 1972, a conditional statutory judgment and sentence was entered and defendant was released until September 15, 1972 to fulfill the two conditions. This form of judgment and sentence is not authorized by statute. Section 40A–29–1, N.M.S.A.1953 (2nd Repl. Vol. 6) provides:

No person convicted of a crime under the Criminal Code shall be sentenced except in accordance with the Criminal Code.

The imposition of sentence may be deferred or suspended, § 40A–29–15, N.M.S. A.1953 (2nd Repl.Vol. 6), but the statute is silent on conditional provisions.

The conditional judgment and sentence, being beyond the jurisdiction of the trial court, was void on its face. Eddins v. Popwell, 33 Ala.App. 239, 35 So.2d 47, aff'd 250 Ala. 453, 35 So.2d 50 (1947); Ex parte Emmons, 96 Okl.Cr. 396, 256 P. 2d 476 (1953); City of Rochester v. Newton, 169 Misc. 726, 8 N.Y.S.2d 441 (1938); 24 C.J.S. Criminal Law § 1581a; 21 Am. Jur.2d Criminal Law, § 534.

B. *Subsequent statutory sentence was invalid for abuse of discretion in not allowing defendant to withdraw his plea of guilty.*

On September 18, 1972, a hearing for sentence was again held. Defendant's attorney announced that every effort was made by subpoena, without success, to locate the victim; that she had removed herself to the State of Mississippi and it would require time to locate her there; that the Army would accept defendant upon dismissal of the charges.

The trial court announced that the reason the victim was not found in New Mexico was her entrance into a college somewhere. The trial court then mistakenly stated that a statement from the victim *or her family* was required, perhaps with knowledge that the father of the victim was unfriendly, and orally sentenced de-

fendant according to statute. Defendant's attorney requested the court to revoke the sentence to allow defendant to withdraw his plea of guilty and go to trial. The trial judge denied the request.

On September 19, 1972, a statutory judgment and sentence was entered committing defendant to the penitentiary.

Whether the trial judge should revoke the oral sentence to allow defendant to withdraw his plea of guilty is within his discretion. State v. Garcia, 47 N.M. 319, 142 P.2d 552, 149 A.L.R. 1394 (1943); State v. Leyba, 80 N.M. 190, 453 P.2d 211 (Ct.App.1969). Compare, Stafford v. State, 82 N.M. 365, 482 P.2d 68 (Ct.App. 1971).

A review of the record convinces me that "judge bargaining" entered into in good faith led to this unfortunate result.

The history of this case was as follows:

On April 18, 1972, defendant pleaded *not guilty* to two counts charged by the grand jury, one of which was aggravated assault. Trial was set for May 30, 1972.

On June 8, 1972, defendant pleaded *guilty* to aggravated assault. The district attorney agreed not to prosecute the second count. This has the tone of "plea bargaining", a standard approved when it appears that the interest of the public in the effective administration of criminal justice would thereby be served. Section 3.1, A. B.A. Standards Relating to Pleas of Guilty; People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970); Deluzio v. People, 494 P.2d 589 (Colo.1972).

On June 29, 1972, a third hearing was held in which defendant requested a suspended sentence. The trial judge recognized the deplorable situation in which defendant was placed as shown in a pre-sentence report. Defendant was sent to the State Penitentiary for a 60 day evaluation under § 40A–29–15, N.M.S.A.1953 (2nd Repl.Vol. 6). This section reads in part:

> Upon entry of a judgment of conviction of any crime not constituting a capital or first degree felony, any court having jurisdiction *when it is satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby,* may . . .

> \*   \*   \*   \*   \*   \*

> C. commit the convicted person to the department of corrections for up to sixty [60] days for purposes of diagnosis, *with direction that the court be given a report as to what disposition appears best when the interest of the public and the individual are evaluated.* [Emphasis added]

The report, after evaluation, recommended defendant be placed on probation.

The intent of the trial court for disposition of this case was now obvious. It was to serve the best interests of the public as well as the defendant. No public interest appears to challenge defendant's desire for clemency. There were favorable pre-sentence and evaluation reports.

On September 7, 1972, a fourth hearing was held. At this hearing, the two conditions, supra, were imposed.

On September 18, 1972, a fifth hearing was held in which the statutory judgment and sentence was invoked without deferment or suspension of the sentence.

The trial court abused its discretion in two respects:

(1) Before sentencing, the trial judge, who had imposed the condition, did not allow the defendant a reasonable opportunity to discover the whereabouts of the female victim. The judge knew she was at college. If the judge did not know the location of the college, arrangements could be made for the parents of the victim or members of her family to disclose the location of the college. The defendant was diligent in his efforts. In fairness, the judge should have granted additional time to fulfill the condition. Instead, the trial judge erroneously required a statement from the victim *or her family.*

(2) Before sentencing, the trial judge knew the facts and circumstances of this case. He "should then have permitted or

directed that the plea be withdrawn and a plea of not guilty entered". State v. Ortiz, 77 N.M. 751, 755, 427 P.2d 264, 267 (1967). A trial judge "should allow the defendant to withdraw his plea of guilty * * * *whenever the defendant,* upon a timely motion for withdrawal, *proves that withdrawal is necessary to correct a manifest injustice.* * * * *Before sentence,* the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." [Emphasis added]. Section 2.1, A.B.A. Standards Relating to Pleas of Guilty; Commonwealth v. Forbes, 450 Pa. 185, 299 A.2d 268, 271 (1973); The People v. Walston, 38 Ill.2d 39, 230 N.E.2d 233 (1967).

Withdrawal of a plea of guilty may be allowed after judgment of conviction within the discretion of the trial court. State v. Wolske, 280 Minn. 465, 160 N.W.2d 146 (1968). But where a "manifest injustice" occurs, the defendant is entitled to withdraw his plea of guilty, once sentence has been pronounced, as a matter of right. The People v. Riebe, 40 Ill.2d 565, 241 N. E.2d 313 (1968); People v. Palma, 25 Mich.App. 682, 181 N.W.2d 808 (1970); 2 Wright, Federal Practice and Procedure, § 539.

A "manifest injustice" occurred. The trial judge conditionally intended to dismiss charges, denied the defendant an opportunity to fulfill one of the conditions imposed, then denied defendant the right to withdraw his plea of guilty. State v. Loyd, 291 Minn. 528, 190 N.W.2d 123 (1971). [Note, 64 Yale L.J. 590, 598 (1955); 55 Colum.L.Rev. 366, 368 (1955)].

In making sentencing determinations, see, Singer, Sending Men to Prison, 58 Cornell L.Rev. 51 (1972); Singer, Bringing the Constitution to Prison, 39 U.Cin.L. Rev. 650 (1970); Newman, Conviction, supra; Frankel, Lawlessness in Sentencing, 41 U.Cin.L.Rev. 1 (1972); Rubin, Allocation of Authority in the Sentencing— Correction Decision, 45 Texas L.Rev. 455

(1967); A.B.A. Standards Relating to Sentencing Alternatives and Procedures; Dawson, Sentencing; A.B.A. Standards Relating to Appellate Review of Sentences; Present Limitations on Appellate Review of Sentencing, 58 Iowa L.Rev. 469 (1972).

Rapidly changing social and behavioral problems are important in the administration of justice in the criminal system. "The withdrawal of the plea of guilty should not be denied in any case where it is evident that the ends of justice will be served by permitting the plea of not guilty in its stead." People v. Riebe, supra, 40 Ill.2d at 568, 241 N.E.2d at 314.

C. *The trial court erred in accepting defendant's plea of guilty without examination.*

As above shown, defendant, on April 18, 1972, pleaded not guilty to aggravated assault. On June 8, 1972, defendant pleaded guilty. "So far as the record shows, the judge asked no questions of [defendant] concerning his plea, and [defendant] did not address the court." Boykin v. Alabama, 395 U.S. 238, 239, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin,* Federal constitutional questions were involved on this issue. The Supreme Court of the United States declared it had jurisdiction to reverse a plea of guilty on a silent record *though the issue was not raised in the trial court.*

Neller v. State, 79 N.M. 528, 445 P.2d 949 (1968) held that pursuant to Rule 93 [§ 21–1–1(93), N.M.S.A.1953 (Repl.Vol. 4)], it did not have to decide this question, because not involved below. However, the Supreme Court did decide the issue. It had jurisdiction to do so because constitutional issues were involved.

Before acceptance of a plea of guilty, a trial court has a duty to ascertain that a defendant knows the consequences of his plea and to advise him of those consequences if he is not otherwise advised. *Neller,* supra.

Under this rule, the trial judge had a duty to examine the defendant upon the subject of his change from a plea of not guilty to a plea of guilty to determine whether it was done voluntarily after advice from competent counsel, and that defendant did understand the consequences of his act in changing his plea. State v. Robbins, 77 N.M. 644, 427 P.2d 10 (1967), cert. denied 389 U.S. 865, 88 S.Ct. 130, 19 L. Ed.2d 137. In *Robbins,* the trial judge did examine the defendant. For proper examination, see, also, State v. Montler, 85 N.M. 60, 509 P.2d 252 (1973); State v. Froelich, 49 Wis.2d 551, 182 N.W.2d 267 (1971); People v. Jaworski, 25 Mich.App. 540, 181 N.W.2d 811 (1970).

The trial court had a duty to examine the defendant on the issue of plea agreement, if any, with the district attorney and make it of record. *Deluzio,* supra; *West,* supra.

The rules for receiving and acting on a plea of guilty are clearly stated in Part I, A.B.A. Standards Relating to Pleas of Guilty. In the absence of statute or court rules, they should be followed to preserve constitutional rights of defendants. These provisions are set forth in People v. Randolph, 488 P.2d 203 (Colo.1971); State v. Sisco, 169 N.W.2d 542 (Iowa 1969); The People v. McCullough, 45 Ill.2d 305, 259 N.E.2d 19 (1970); People v. Rufus Williams, 386 Mich. 277, 192 N.W.2d 466 (1971); State v. Hyslop, 189 Neb. 331, 202 N.W.2d 595 (1972); Wilson v. State, 456 S.W.2d 941 (Tex.Crim.1970); Ex Parte Battenfield, 466 S.W.2d 569 (Tex.Crim. 1971); United States v. Howard, 407 F.2d 1102 (4th Cir. 1969). Many other jurisdictions have relied upon these rules.

It is not necessary to set forth the many varied reasons stated for compliance by the trial court with these rules.

The defendant should be allowed to withdraw his plea of guilty and proceed in accordance with the Rules of Criminal Procedure. In the event the plea of guilty is not withdrawn, defendant should be subject to re-sentencing.