**William E. JONES, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 23503.**

United States Court of Appeals, Ninth Circuit.

Feb. 26, 1970.

George R. Priest (argued), San Francisco, Cal., for appellant.

Robert S. Linnell (argued), U. S. Atty., Reno, Nev., for appellee.

Before HAMLEY, BROWNING and HUFSTEDLER, Circuit Judges.

BROWNING, Circuit Judge:

In 1964 petitioner pleaded guilty to an information charging a violation of 21 U.S.C. § 174; he was sentenced to ten years' imprisonment. In 1966 he filed a petition under 28 U.S.C. § 2255 alleging that his guilty plea was induced by coercive in-custody interrogation without counsel, threats to himself and his family, an agreement to dismiss other charges, and promises of leniency.

The district court denied the petition on the ground that the records of the case conclusively showed that petitioner was entitled to no relief. Petitioner appealed. We reversed, and remanded for an evidentiary hearing. Jones v. United States, 384 F.2d 916 (9th Cir. 1967). After the evidentiary hearing was held the district court found that petitioner's plea was entered voluntarily and understandingly, with full knowledge of the consequences, and denied the petition. Petitioner now appeals from that denial.

■■ We have examined the record in the light of petitioner's contentions and are satisfied that the judgment should be affirmed. In the main, petitioner's arguments rest upon factual premises which the district court rejected—impliedly, but nonetheless clearly—

and it is sufficient to say that these factual determinations are not clearly erroneous.[1] We do not consider petitioner's contention that he was denied effective assistance of counsel, for it was not raised below. Watkins v. United States, 356 F.2d 472, 473 (9th Cir. 1966). One remaining contention, however, requires discussion.

Before accepting petitioner's guilty plea, the district court conducted the inquiry contemplated by Federal Rule of Criminal Procedure 11 in order to determine whether the plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea. In the course of this inquiry the following discussion occurred:

"THE COURT: Is your offer to plead guilty to this offense induced by any sort of a deal that you or your attorney have made with the United States Attorney's office?

DEFENDANT: No.

DEFENDANT'S COUNSEL: May it please this Honorable Court, for the purpose of the record, I have no deal with the United States Attorney's office, if you were concerned about that.

\* \* \* \* \* \*

THE COURT: Has anyone offered you any benefit, any promise of leniency or anything of that sort in order to persuade you to plead guilty to this charge?

DEFENDANT: No.

THE COURT: Has anyone used any force or threats of any sort in order to bring about a plea of guilty to this charge?

DEFENDANT: No.

THE COURT: This is a purely voluntary act on your part; is that correct?

DEFENDANT: "Yes."

In his subsequent section 2255 motion petitioner alleged, in direct contradiction of these responses, that his guilty plea was not voluntary but was the product of coercion and promises of leniency. The district court denied relief on the ground that petitioner's statements at arraignment conclusively established his "then state of mind." Our remand for a hearing recognized that such statements were only "evidential on the issue of voluntariness \* \* \* not conclusive." 384 F.2d at 917.

At the hearing on petitioner's allegations, all witnesses testified that petitioner's plea was in fact the result of an agreement between the petitioner and state and federal officials. The evidence established that the day after petitioner's arrest an information was filed in state court charging petitioner with unlawful sale of a narcotic drug in violation of Nevada Revised Statutes ch. 453.030. The penalty for this offense included imprisonment for *not less than 20 years* or more than 40 years. 1961 Nev. Stats. 157 *amended by* 1967 Nev. Stats. 585. Federal officials agreed to charge petitioner under 21 U. S.C. § 174, which provided for imprisonment of *not less than five years* or more than 20 years if petitioner agreed to plead guilty to this charge when filed, and also to act as an informer for federal narcotics agents. State officials agreed to dismiss the state criminal proceedings against petitioner.[2]

---

1. The trial court's determination of the historical facts is subject to the clearly erroneous standard of review, Fed.R.Civ.P. 52(a), although the appellate court must draw its own conclusion as to voluntariness from those facts once they are determined. *See* Davis v. North Carolina, 384 U.S. 737, 741–742, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Haynes v. Washington, 373 U.S. 503, 515–516, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); United

States v. Read, 411 F.2d 582, 583 (9th Cir. 1969).

2. Petitioner also contended that it was agreed that leniency would be recommended, but government witnesses testified that they agreed only that petitioner's cooperation would be called to the sentencing court's attention; it was. The district judge accepted hte testimony of the government's witnesses.

The agreement was carried out. Petitioner was released on bail and worked with federal narcotics agents as an informer for approximately six months. His efforts resulted in the conviction of two other narcotics offenders. Federal authorities filed the information charging petitioner with a violation of 21 U. S.C. § 174, and petitioner entered a plea of guilty—the plea in question here. State authorities then dismissed the information charging petitioner under Nev. Rev. Stats. ch. 453.030.

Petitioner contends that the deliberate concealment of this plea bargain subverted Rule 11 and invalidated his guilty plea.

 A guilty plea is not necessarily invalid because it rests upon a bargain with the prosecutor, Cortez v. United States, 337 F.2d 699, 701 (9th Cir. 1964), but knowledge of the existence of such an agreement, its terms, and the negotiations which led to it, are crucial to the effective discharge of the court's responsibility to assure that the plea is not accepted unless it is voluntarily made. *Cf.* Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962).

 In this context, Rule 11 has two purposes. "First, * * * it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). *See also* Halliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).

The denials by petitioner and his attorney of the existence of any "deal" or other inducement affecting petitioner's guilty plea—and, equally, the silence of the prosecuting attorney in the fact of those denials—reduced the arraignment proceedings in this case to a sham. Both purposes of Rule 11 were frustrated. The district judge was denied access to information essential to a determination of the voluntariness of the plea, and a full public record of that information was not made at the time the plea was entered.

We have mentioned the importance of disclosure to the judge's determination of the voluntariness of the plea. It is important for other reasons as well.

Full disclosure reduces the risk of an unfair agreement—unfair to the public because of an unwarranted concession by an overburdened prosecutor anxious to avoid trial;[3] or unfair to the defendant because the concession is either illusory, or, at the other extreme, so irresistible in light of the inevitable risks of trial as to induce an innocent defendant to plead guilty.

Airing plea agreements in open court enhances public confidence in the administration of justice. Covert bargains excite suspicion; and arraignments in which palpably false answers to ritualistic questions are solemnly recorded reflect adversely upon all who participate.[4]

Full disclosure makes direct appellate review meaningful. It also reduces the

---

3. "Plea bargaining is the unattractive concomitant of an overloaded and inefficient system. * * * Growing concessions to guilty-plea defendants have almost matched the growing need to avoid the burdensome business of trying cases." Morris, Are Courts Too Soft on Criminals? Probation and Plea Bargaining in Metropolitan Jurisdictions, 53 Judicature 231, 233 (1970).

4. *See* United States v. Williams, 407 F.2d 940, 947–948 (4th Cir. 1969); American Bar Association, Standards Relating to Pleas of Guilty 61 (Approved Draft 1968); The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9, 12 (1967); D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 30–31, 82–83 (1966); Gentile, Fair Bargains and Accurate Pleas, 49 Boston U.L.Rev. 514, 518 (1969).

number and difficulty of subsequent collateral attacks.[5] A full record of the agreement, and of the defendant's understanding of it, limits the matters subject to challenge. Even as to facts which are outside the record and therefore are not conclusively established, the record may be so persuasive as to discourage post-conviction proceedings, or at least to simplify their ultimate disposition. Finally, a prisoner whose plea of guilty is accepted only after a full disclosure and judicial scrutiny of the agreement upon which it rests, is more likely to accept the justness of his conviction, thus removing a substantial obstacle to rehabilitation.[6]

■ For the reasons suggested, it is incumbent upon both defense and prosecution counsel to fully disclose the terms of any understanding relating to a defendant's plea and the circumstances under which the understanding was reached. Moreover, because of the prevalence of such agreements, the judge on his own initiative should explore, on the record, whether such an agreement exists, and, if so, its terms, how they were arrived at, the defendant's understanding of them, and their influence upon his decision to plead guilty.[7]

■ It does not follow, however that a guilty plea which is the product of a plea bargain not disclosed at the time the plea was entered is always to be set aside. The plea is valid if made voluntarily with understanding of the nature of the charge and the consequences of the plea.

■ The substance of the present case is that the petitioner, having confessed to the offense, faced almost certain conviction of the pending state criminal charge carrying a minimum mandatory sentence of 20 years; he and his counsel, being well and fully advised, initiated negotiations and pursued them to an agreement which resulted in substitution of a federal charge carrying a minimum mandatory sentence of five years for the state charge. The district court had no difficulty in concluding that petitioner's plea was voluntary; and, on the whole record, neither do we. *See* United States v. Thomas, 415 F.2d 1216, 1218 (9th Cir. 1969); Gilmore v. California, 364 F.2d 916, 918 (9th Cir. 1966).[8]

■ Alternatively, petitioner asks us to set aside his plea under the rationale of this court's decision in Heiden v. United States, 353 F.2d 53 (9th Cir. 1965), and the Supreme Court's decision in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Much of the reasoning of those decisions is applicable here. Both, however, establish a rule of general application through the exercise of a supervisory authority which could not be exercised appropriately by a single panel of this court. However, all concerned should recognize that disclosure is to their benefit; and prosecutors especially

5. *See* McCarthy v. United States, 394 U.S. 459, 465–466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Halliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L. Ed.2d 16 (1969); Task Force Report, *supra* note 4, at 10; D. Newman, *supra* note 4, at 218; Gentile, *supra* note 4, at 518.

6. *See* D. Newman, *supra* note 4, at 222.

7. United States v. Williams, 407 F.2d 940, 947–949 (4th Cir. 1969); ABA Standards, *supra* note 4, §§ 1.5, 1.7; Task Force Report, *supra* note 4, at 12; *see* D. Newman, *supra* note 4, at 234; H. Subin, Criminal Justice in a Metropolitan Court 140–41 (1966); Gentile, *supra* note 4, at

518; Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 894–95 (1964).

8. Nor does Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968), aid petitioner. Unlike the situation in *Bailey*, the district judge in this case was prevented from exploring petitioner's understanding of the consequences of the plea bargain at arraignment because petitioner and his attorney denied its existence, and after a full evidentiary hearing the court has now determined that petitioner was in fact aware of those consequences. *See* note 2.

should note that under Jones v. United States, 384 F.2d 916 (9th Cir. 1967), a sham Rule 11 inquiry will not preclude a full evidentiary hearing on a section 2255 petition alleging an involuntary plea and undisclosed bargain.

Affirmed.