503 P.2d 1177

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**James David SNOW, Defendant-Appellant.**

**No. 897.**

Court of Appeals of New Mexico.

Oct. 6, 1972.

Certiorari Denied Nov. 28, 1972.

---

Mack Easley, Easley & Reynolds, Hobbs, for appellant.

David L. Norvell, Atty. Gen., Winston Roberts-Hohl, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

SUTIN, Judge.

Snow was convicted and sentenced for second degree murder. Section 40A–2–1, N.M.S.A.1953 (Repl.Vol. 6). Snow appeals.

We affirm.

I. *Snow Waived his Right to be Furnished Information at the Beginning of the Trial.*

Snow contends the trial court erred in refusing to order the district attorney to furnish to defendant *at the beginning of the trial* information from the reports and statements of witnesses that would tend to exculpate Snow.

In Wilhite v. Agbayani, 2 Ill.App.2d 29, 118 N.E.2d 440 (1954), the court said:

In general it has been held that the trial begins when the jury are called into the box for examination as to their qual-

ifications and that the calling of a jury is part of the trial. 53 Am.Jur. Trial, § 4.

State v. Johnson, 24 S.D. 590, 124 N.W. 847 (1910). Compare State v. Rhodes, 76 N.M. 177, 413 P.2d 214 (1966).

The day before trial, Snow filed a motion for production of evidence. It was called to the attention of the trial judge on the morning of trial. At a hearing on the motion, after the jury had been sworn, the following occurred:

MR. HANAGAN: We have no objection, *if he sees fit to call the Witness,* of furnishing him a copy of the statements we have, at that time.

THE COURT: I believe that is proper and appropriate, and with that as a guideline, *I think at the time that witnesses are called,* you will be provided with a copy of any written statements they may have, and any commentary from the police reports, indicating the statement made in it, directly to the investigating officers.

MR. EASLEY: *If the Court please, I think that is well taken.* I won't make any fuss about it, except that if we have a lengthy statement, that we have to analyze, we would have to have sufficient time to do it.

THE COURT: Well, we'll give you enough time to look at it, to take a look at it, if that becomes a critical matter. I think that Mr. Hanagan's statement, as far as I am concerned, is in accordance with the guidelines used in these matters, plus he has the additional binding obligation on him, *not to conceal from the defense, any matters of an exculpatory nature.* So, with those restrictions on him, I think probably you can get whatever you are entitled to get. Let's take a ten minute recess, and then we'll be ready to proceed.

MR. EASLEY: Very well, Judge. [Emphasis added.]

The foregoing constitutes a waiver by Snow of the trial court's failure to order the state to furnish information at the beginning of the trial.

## II. *No Error for Failure to Furnish Information During Trial.*

The third witness to be called by the state was the Chief of Police of Artesia. When this witness was called by the state, Snow made no request for the witness' report or statements taken by him of other witnesses.

Upon cross-examination, Snow requested a copy of the witness' report. It was handed to him. Snow then moved that the district attorney be ordered to turn over to him for examination, any statements that were taken by this witness, and of other witnesses to this incident, in which there is material which would benefit the defendant and might be exculpatory.

The trial court said:

All right, I think we are within the purview of the matter that we discussed before. I think that the statements taken as to the other witnesses will be produced as those witnesses are produced, as indicated. It is my view that at the present time, the examination of Chief Robinson as to those particular statements would be beyond the scope of the direct examination and will be premature in any event. So, I presume that it will come in proper sequence.

A continuing objection was granted Snow because his attorney said: ". . . I imagine we'll have this come up a time or two."

MR. HANAGAN: What come up?

MR. EASLEY: As to these other witnesses, taking the statements.

MR. HANAGAN: *I understand that has not been gone into with this Witness, until you call him as your own Witness.*

MR. EASLEY: *That is true.* [Emphasis added.]

Snow then requested a moment to glance through the Chief's statement. The trial court said:

Yes. Let's take a two minute recess, and the Jury may remain in the box. You might want to pass one of those cartridges through the Jury, and let them examine them.

(One spent round and one live round of ammunition examined by the Jury. [sic]

The record does not show how long Snow examined the statements, but it is immaterial since Snow continued with cross-examination of the Chief without objection to the time allowed to glance through the Chief's statement.

Later in the trial, Snow called one of his own witnesses. After direct and cross-examination, and during *redirect* examination, Snow demanded statements made by the witness. These were furnished Snow. On the first question, Snow asked the witness if he were asked a question to which he made an answer. The question and a good part of the answer were read. Objection by the state was sustained, but the matters read were not ordered stricken from the record. They remained in evidence for the consideration of the jury.

In Comins v. Scrivener, 214 F.2d 810 (10th Cir. 1954), 46 A.L.R.2d 1, the court said:

It is well settled that the scope and extent to which the redirect examination of a witness shall be permitted to go rests largely in the sound judicial discretion of the trial court and its ruling in respect thereto will not be disturbed on appeal unless an abuse of discretion is clearly shown.

We do not believe the trial court abused its discretion.

■■ We find nothing in the record of the entire trial to support Snow's claim of error. It does not show that the district attorney concealed any matters of an exculpatory nature, or suppressed any evidence, or failed to make full disclosure as ordered by the trial court material to the issue of guilt. There is nothing in the record showing that the district attorney or the police officers possessed information that might exonerate Snow or help in his defense. State v. Turner, 81 N.M. 571, 469 P.2d 720 (Ct.App.1970). Our review is limited to a consideration of the matters disclosed by the record. State v. Sexton, 78 N.M. 694, 437 P.2d 155 (Ct.App.1968).

Snow did not request that the district attorney furnish him with statements of some of his own witnesses for them to review when called to testify. Other statements were furnished on request but not submitted to the witness for review before direct and cross-examination. The trial court gave Snow the right to request and obtain statements of witnesses to the shooting in advance of their taking the stand for the purpose of refreshing their memories. This right was not exercised. Perhaps the dramatic display of impeachment tactics on the part of the district attorney, as claimed by Snow, would not have had near the impact it did on the jury if Snow had exercised his right to request the statements when he called his witnesses to the stand.

■ The time for production of information by the state on demand of a defendant is Snow's real struggle for reversal. We know of no rule of law, and no authority has been cited, which required the district attorney on the morning of trial to voluntarily open his files for a defendant to review.

In Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562, 33 L.Ed.2d 706 (1972), the court said:

We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.

This matter does not merit argument or citation of authority. There was no error for failure to furnish information during trial.

**402**

III. *The Trial Court did not err on the Exclusion of Proffered Evidence.*

■ Snow proposed to present evidence as to statements made by him in the home of one of his witnesses prior to the commission of the alleged crime. The statements made were self-serving declarations which related to questions of intent or motive. The trial court excluded the statements. It is Snow's position that the rule for exclusion of self-serving declarations should be reversed. This, we recently refused to do. State v. Hunt, 83 N.M. 753, 497 P.2d 755 (Ct.App.1972). In the alternative, Snow claims the proffered statements were admissible under the "res gestae" theory. Here again, State v. Hunt, supra, shows that the "res gestae" theory is not applicable under the facts in the record.

■ Snow also proposed to call a witness to testify as to the deceased's reputation and disposition for fighting, his violent temper, and his conduct as a bully. The trial court excluded the proffered testimony which Snow wanted to use to corroborate the testimony of other witnesses. No error was committed. State v. Ardoin, 28 N.M. 641, 216 P. 1048 (1923); State v. Moraga, 82 N.M. 750, 487 P.2d 178 (Ct. App.1971).

The trial court did not err in the exclusion of the proffered evidence.

■ Snow also claims that the district attorney committed prejudicial error in closing argument. However, there is absent a record of Snow's argument. We cannot know whether Snow opened the door for the state's comments. From the record, therefore, no reviewable question is presented. State v. Gunthorpe, 81 N.M. 515, 469 P.2d 160 (Ct.App.1970), cert. den. 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971).

Neither do we believe that fundamental error is an issue on this appeal.

Affirmed.

It is so ordered.

WOOD, C. J., and HERNANDEZ, J., concur.