639 P.2d 1200

STATE of New Mexico, Plaintiff-Appellee,

v.

Fidel LUCERO, Defendant-Appellant.

No. 5183.

Court of Appeals of New Mexico.

Dec. 1, 1981.

John B. Bigelow, Chief Public Defender, David Stafford, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Clare E. Mancini, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Chief Judge.

Defendant moved, before trial on a supplemental proceeding charging him as an habitual offender, to dismiss the charge or, alternatively, to permit withdrawal of his guilty plea to an underlying charge. The trial court denied the motions and defendant appeals. We reverse.

FACTS:

In 1980, defendant was charged with commercial burglary. He entered a guilty plea and was sentenced to eighteen months imprisonment. Subsequently, the State filed a supplemental information alleging that defendant was an habitual criminal with two prior felony convictions.

At the hearing on defendant's motion to dismiss the supplemental information, defendant contended that the prosecutor had agreed not to charge defendant as an habitual offender in exchange for a guilty plea to the earlier underlying charge. This alleged agreement was not reduced to writing or entered into the record either at the

time of the guilty plea or the sentencing proceedings.

Counsel who represented defendant on the burglary charge testified that she had discussed a plea agreement with the prosecutor, her position during those negotiations being that defendant would not plead guilty to commercial burglary unless the prosecutor agreed not to charge defendant as an habitual offender. According to her, the prosecutor agreed. She then informed defendant of the agreement and, after some discussion, he accepted its terms. She advised defendant that the court would probably impose a sentence on the burglary offense, but that no habitual offender proceedings would be initiated.

Neither the attorneys nor the defendant mentioned the plea agreement during the plea or sentencing proceedings. Defense counsel testified that it was part of her agreement with the assistant district attorney that the plea agreement would not be mentioned to the trial judge because of her understanding that, as a policy of the district attorney's office, agreements to forego habitual offender charges were not to be admitted on the record. She believed, however, that she and the prosecutor had a "gentlemen's agreement."

Defendant then testified that he pled guilty after his attorney had advised him that the prosecutor would not charge him with being an habitual criminal. This was the "main reason" for his decision to plead guilty. He admitted that he had not mentioned the agreement to the trial court at the guilty plea and sentencing proceeding, but not because defense counsel had advised him not to disclose the agreement to the judge; she had told him only that if he pleaded guilty, the habitual charge would not be filed.

The assistant district attorney also testified at defendant's motion hearing. Although he said he did not recall any plea agreement conversations with defense counsel, he knew that he had not agreed that he would not charge defendant with being an habitual criminal because he had no authority to make such a deal.

Defendant's counsel pointed out in argument to the trial judge that defendant gained nothing from his guilty plea, and he should be allowed alternative relief: specific performance of the bargain, or an order permitting defendant to withdraw his guilty plea. The second alternative was based on the theory that whether or not a plea agreement had actually existed, defendant believed an agreement had been made and, consequently, he had not entered a voluntary and intelligent plea.

The trial court denied the motion to dismiss the supplemental charge, unconvinced that a plea agreement had been made; and it denied the motion to withdraw the guilty plea because it felt there was no evidence that defendant had relied upon his counsel's representations that an habitual offender charge would not be brought.

DISCUSSION:

1. *The plea bargain* :

■ Rule 21 of N.M.R.Crim.P., N.M.S.A. 1978, provides the means and manner by which plea agreements are to be entered into. The trial court heard the evidence on this issue and chose to disbelieve the presentation made by defendant and to accept the testimony produced by the State. In the absence of any written agreement or disclosure of it in open court, as required by Rule 21, the trial court acted well within its authority as the decider of the facts. Its decision on that issue will not be disturbed on appeal. *Lucas v. Lucas*, 95 N.M. 283, 621 P.2d 500 (1981).

■ We have referred to Rule 21 because of our concern regarding defendant's allegations that there was an existing "policy" of reaching plea bargains upon condition that no written record be made, and the trial judge not be informed, presumably to protect the district attorney's office from possible adverse publicity regarding such pleas and dispositions. Secret plea agreements are not only cowardly and unreliable; they are impermissible under our Rules of Criminal Procedure and, not being allowed, are not to be condoned. *See State v. Ericksen*, 94 N.M. 128, 607 P.2d 666 (Ct.App. 1980). The requirements of N.M.R.Crim.P.

21, N.M.S.A.1978, are to be followed in all plea bargainings. *State v. Lord*, 91 N.M. 353, 573 P.2d 1208 (Ct.App.1977).

Subsection (f) of Rule 21, N.M.R.Crim.P., N.M.S.A.1978, requires the trial court to address the defendant personally, in open court, to determine whether the guilty plea "is voluntary and not the result of force or threats or promises apart from a plea agreement." That inquiry was made by the trial court. The rule provides further, however, that the court "*shall also* inquire \* \* \* whether the defendant's willingness to plead \* \* \* results from prior discussions between the attorney for the government and the defendant or his attorney." That portion of the rule was not followed in this case.

Subsection (f) is identical to Rule 11(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The requirement that the trial court inquire whether the defendant's willingness to plead guilty results from prior plea discussions between the attorney for the government and the defendant or his attorney was adopted in the federal system and in New Mexico in 1974. Prior to that, numerous federal cases discussed the problems encountered when there is no record of the plea agreement between defendant and the prosecutor. *See, e.g. United States v. Dixon*, 504 F.2d 69 (3rd Cir. 1974); *Moody v. United States*, 497 F.2d 359 (7th Cir. 1974); *United States v. Gallington*, 488 F.2d 637 (8th Cir. 1973); *Walters v. Harris*, 460 F.2d 988 (4th Cir. 1972); *Raines v. United States*, 423 F.2d 526 (4th Cir. 1970); *Jones v. United States*, 423 F.2d 252 (9th Cir. 1970).

Prior to the adoption of the second sentence of subsection (d) of Federal Rule 11, the Supreme Court described the two purposes of Rule 11:

First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 424–425 (1968).

In *United States v. Gallington, supra*, the court insisted that if plea bargaining be practiced, requirements of Federal Rule 11 be followed. The court directed district court judges to require that the plea agreement be disclosed in open court at the time the plea is offered and that the reasons for reaching the agreement be fully described. Likewise, in *Moody v. United States, supra*, the Seventh Circuit, exercising its supervisory powers, ordered district courts to make specific inquiries of defendant, of the defense counsel, and of the United States Attorney regarding the existence of any plea negotiations. *Moody* preceded the effective date of subsection 11(d), but the court noted that the ordered inquiry would be mandated once the amendment became effective.

In another case decided before the promulgation of Rule 11(d), the Ninth Circuit Court of Appeals outlined the procedure to be followed and gave an irresistible rationale for so doing:

We have mentioned the importance of disclosure to the judge's determination of the voluntariness of the plea. It is important for other reasons as well.

Full disclosure reduces the risk of an unfair agreement—unfair to the public because of an unwarranted concession by an overburdened prosecutor anxious to avoid trial; or unfair to the defendant because the concession is either illusory; or, at the other extreme, so irresistible in light of the inevitable risks of trial to induce an innocent defendant to plead guilty.

Airing plea agreements in open court enhances public confidence in the administration of justice. Covert bargains ex-

cite suspicion; and arraignments in which palpably false answers to ritualistic questions are solemnly recorded reflect adversely upon all who participate.

Full disclosure makes direct appellate review meaningful. It also reduces the number and difficulty of subsequent collateral attacks. A full record of the agreement, and of the defendant's understanding of it, limits the matters subject to challenge. Even as to facts which are outside the record and therefore are not conclusively established, the record may be so persuasive as to discourage post-conviction proceedings, or at least to simplify their ultimate disposition. Finally, a prisoner whose plea of guilty is accepted only after a full disclosure and judicial scrutiny of the agreement upon which it rests, is more likely to accept the justness of his conviction, thus removing a substantial obstacle to rehabilitation.

For the reasons suggested, it is incumbent upon both defense and prosecution counsel to fully disclose the terms of any understanding relating to a defendant's plea and the circumstances under which the understanding was reached. Moreover, because of the prevalence of such agreements, the judge on his own initiative should explore, on the record, whether such an agreement exists, and, if so, its terms, how they were arrived at, the defendant's understanding of them, and their influence upon his decision to plead guilty.

*Jones v. United States, supra*, at 255–56.

*Walters v. Harris, supra*, explaining why the trial court should also address its inquiries to the attorneys, noted that an examination of defendant, alone, would not always expose the existence of a plea bargain or promise. Defendants will often deny the existence of a plea bargain out of fear that disclosure will jeopardize the bargain.

New Mexico has consistently followed the approach that the validity of a guilty plea is determined by whether the plea was intelligent or voluntary; New Mexico has not approached the question on the basis of a checklist of specific questions, but has considered the question by examination of the record as a whole.

*State v. Martinez*, 89 N.M. 729, 557 P.2d 578 (Ct.App.1976).

■ Although the trial court did ask defendant whether his plea was voluntary, and defendant replied that it was, defendant's statement does not conclusively determine that no promises had been made. *State v. Ortiz*, 77 N.M. 751, 427 P.2d 264 (1967); *Walters v. Harris, supra*. The trial court did not make the separate and distinct inquiry required by the second sentence of Rule 21(f). *See, United States v. Scharf*, 551 F.2d 1124 (8th Cir. 1977).

We adopt the exposition of our Rule 21(f) found in the federal decisions we have cited on federal Rule 11(d), and impose upon trial courts the responsibility to fully comply with the second sentence of the rule according to the directives of *Moody* and *Jones, supra*. Had the trial court made the required second inquiry of all participants in this case, under the holding of *State v. Lord, supra*, defendant would have been completely foreclosed from later asserting that the prosecutor had made unkept promises. As the record now stands, however, the State had the burden of showing that defendant's guilty plea resulted from a knowing and voluntary waiver. *State v. Garcia*, 95 N.M. 246, 620 P.2d 1271 (1980), but the record of defendant's reliance on his counsel's advice of a plea bargain is uncontroverted. Strict adherence to the mandates of Rule 21, *supra*, might well have enabled the State to carry its burden of persuasion on the validity of defendants' guilty plea. *State v. Garcia, supra*.

2. *The guilty plea to the underlying offense.*

■ Defendant argued in the trial court that his guilty plea to commercial burglary was not voluntarily nor intelligently made. He did not raise below his contention here that he was denied effective assistance of counsel on his plea of guilty, but it is an argument nevertheless reviewable because it concerns a fundamental right. *State v. Luna*, 92 N.M. 680, 594 P.2d 340 (Ct.App. 1979).

■ Defendant's claim in this court also reaches the point he unsuccessfully argued at the district court level. If, by reason of ineffective assistance of counsel he did not make a voluntary or intelligent plea, his guilty plea should be set aside and he should be given the right to a trial by jury.

A. *Was defendant denied a constitutional right to effective assistance of counsel?*

The trial court found that a plea agreement did not exist, and we are bound by that determination. But what other results flow from such a finding? By defense counsel's own admission, she advised her client to the contrary. Her version of the negotiations with the district attorney's office must lead to one of two conclusions:

(1) She abrogated her responsibility to protect defendant when she failed to have the alleged plea bargain reduced to writing and spread upon the record at the hearing, to guarantee that defendant would have the benefit of the promise she claims was made. If, as she intimated in her testimony, she feared the district attorney would deny existence of an agreement should it be made known to the trial judge, she was neglectful of her duty to advise defendant how vulnerable was his position without a written agreement and an in-court acknowledgement by the State.

(2) On the other hand, accepting the trial court's finding of "no deal," as we must, defense counsel's admissions of her representations to her client preclude any view other than that defendant was materially and prejudicially misinformed by his own attorney. Falsely or inaccurately advising one's client is on its face a breach of an attorney's professional responsibility.

New Mexico has adhered to the ineffective counsel test of "sham, farce, or mockery," as first stated by our Supreme Court in *State v. Moser*, 78 N.M. 212, 430 P.2d 106 (1967). *See State v. Urioste*, 93 N.M. 504, 601 P.2d 737 (Ct.App.1979). That test has been effectively overruled by the Tenth Circuit Court of Appeals, the federal appellate court which decides complaints in our geographical area concerning State violations of constitutional rights under habeas corpus proceedings.

■ It appears from *Dyer v. Crisp*, 613 F.2d 275 (10th Cir. 1980) that habeas corpus proceedings were filed in the federal district court of Oklahoma, in which the petitioner alleged he had not been accorded effective assistance of counsel at his state trial. Oklahoma's decisions have relied on the "sham, farce or mockery" standard of review. *Padillow v. State*, 501 P.2d 837 (Okl.Cr.1972). The petition for habeas corpus was denied, and defendant appealed that decision to the Tenth Circuit. In *Dyer, supra*, at 613 F.2d 278, the Court of Appeals observed that "[t]he Sixth Amendment requires that assistance of counsel be measured against a standard higher than 'sham or mockery' * * *. [It] demands that defense counsel exercise the skill, judgment and deligence of a reasonably competent defense attorney." Defense counsel urges us to apply the *Dyer* rule in this case. We decline to do so since it is the prerogative of the Supreme Court to articulate a new rule if one is to be adopted. *See Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

■ Nevertheless, considering counsel's representation of defendant in the light of the *Moser* rule, together with her admissions as a witness, it is plain that she misrepresented her client's precarious position to him. Attorneys with normal and customary skills, *State v. Trivitt*, 89 N.M. 162, 168, 548 P.2d 442, 448 (Ct.App.1976) would not suggest that their clients waive their right to trial and all other procedural safeguards and thus expose themselves to enhanced jeopardy, in the absence of a valid *quid pro quo*. From the alternative standpoint, even if the trial court were to have believed that a plea bargain had been agreed to in this matter, competent defense counsel would not have permitted evasion of criminal rules that were intended, at least in part, for the protection of the defendant, nor would they have engaged in conduct suspiciously harmful to their clients and adroitly deceptive to the court. *Van Orman v. Nelson*, 78 N.M. 11, 427 P.2d 896 (1967); *see also* ABA Standards for Criminal Justice, Vol. I, ch. 4, The Defense Function 4–3.9 (2d ed. 1980).

Therefore, on the state of this record, and applying the *Moser* rule, we are obliged to hold that defendant was denied effective assistance of counsel when he entered his guilty plea to the underlying charge of commercial burglary.

B. *Did defendant enter a voluntary, intelligent plea of guilty to the underlying charge?*

At the conclusion of the hearing on defendant's motion to set aside the guilty plea, the trial court stated on the record that there was "no evidence" that defendant had relied on his attorney's representations that, in exchange for a guilty plea, an habitual proceeding would not be filed. On that basis, the motion was denied. Refusal to set aside the plea for that reason is not supported in the evidence. To the contrary, defendant testified that the "main reason" he agreed to plead guilty was because his attorney had informed him that the specific plea bargain alleged had been struck. His trial counsel corroborated that evidence with her testimony, and neither witness was contradicted in any manner by any other evidence. Indeed, a further corroboration could be implied from the fact of the plea itself and no concommitant benefit to defendant in exchange.

Due process embraces the requirement that a guilty plea be made voluntarily and intelligently. *State v. Robbins*, 77 N.M. 644, 427 P.2d 10 (1967). Trial counsel's relation to defendant of an agreement found by the court to be non-existent, which information induced his guilty plea, clearly removed that plea from the category of pleas "freely, intelligently or knowingly given." *State v. Kincheloe*, 87 N.M. 34, 528 P.2d 893 (Ct. App.1974). One cannot freely, intelligently, or knowingly respond to a circumstance about which he has been falsely informed by the very person upon whom he has the right to rely and from whom is owed the duty of "effective assistance." *United States v. Simpson*, 436 F.2d 162 (D.C.Cir. 1970).

The failure of due process at this important point in a criminal proceeding is rectified by allowing a guilty plea to be withdrawn. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Kincheloe, supra.*

The matter is reversed. The trial court is instructed to set aside the convictions and sentences in the commercial burglary and habitual offender proceedings; to allow withdrawal of defendant's guilty plea to the charge of commercial burglary, and to reinstate that matter on the criminal trial docket.

It is so ordered.

HENDLEY, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I dissent.

I disagree with the majority decision that the trial court committed error in denying defendant's motion to dismiss the habitual offender's charge against him or in alternatively refusing to permit defendant to withdraw his guilty plea to the charge of commercial burglary.

The issue of whether the defendant entered a guilty plea to the charge of commercial burglary on March 6, 1980 in reliance upon an undisclosed oral agreement between his own attorney and the prosecutor, that he would not be prosecuted as an habitual offender was a disputed factual issue tried to the trial court and which Judge Stowers decided adversely to the defendant. There was testimony from the defendant and his attorney that such promise was made; contradicting such testimony was the testimony of the Prosecutor, that no such promise was in fact made to defendant or his attorney. Where the evidence is clearly in conflict, the credibility of the witnesses and conflicts in the evidence are to be resolved by the trial court as fact finder and not by an appellate court on review. *State v. Lampman*, 95 N.M. 279, 620 P.2d 1304 (Ct.App.1980); *State v. Martinez*, 95 N.M. 795, 626 P.2d 1292 (Ct.App. 1979); *State v. Santillanes*, 86 N.M. 627, 526 P.2d 424 (Ct.App.1974).

There was substantial evidence to support the decision of the trial court. The court

ruled that it was not convinced that any agreement was ever made regarding a promise not to pursue habitual criminal charges against the defendant. Because there was a conflict in the evidence as to the existence of any such alleged unkept promise, the trial court's determination of the factual issue against defendant should be controlling. *State v. Bloom*, 90 N.M. 192, 561 P.2d 465 (1977); *State v. Landlee*, 85 N.M. 449, 513 P.2d 186 (Ct.App.1973); *State v. McKay*, 79 N.M. 797, 450 P.2d 435 (Ct.App.1969).

In addition to hearing the conflicting testimony of the witnesses at the motion hearing, the trial court also had before it the transcript of the sentencing hearing of defendant on March 6, 1980. As shown by the record the court inquired of defendant:

The Court: You understand in making this plea that no one can make any promises to you as to what sentence the court will impose.

Mr. Jaramillo: Yes.

Mr. Lucero: Yes.

The Court: Have any promises been made to induce you to plead guilty here today? Has anybody promised you anything if you enter a plea?

Mr. Jaramillo: No.

Mr. Lucero: No.

     *    *    *    *    *    *

The Court: Are both of you entering this plea freely and voluntarily, without any promises of any kind having been made to you?

Mr. Jaramillo: Yes.

Mr. Lucero: Yes.

The trial court expressly determined there was no undisclosed, unkept promise that was part of the plea agreement, and expressed such finding at the conclusion of the evidentiary hearing.

Although the existence of the alleged component of the plea bargain was determined adversely to Appellant, the failure to disclose the existence of the alleged promise to the trial court at the time of the court's inquiry concerning any promises should constitute hereunder, a waiver under the decision in *State v. Lord*, 91 N.M. 353, 573 P.2d

1208 (Ct.App., *cert. denied*, 91 N.M. 491, 576 P.2d 297, 1978). In *State v. Lord*, the rule was stated:

"When plea bargaining occurs it ought to be spread on the record and publicly disclosed. *Raines v. United States*, 423 F.2d 526 (4th Cir. 1970). Rule of Crim. Proc. 21 was designed to obtain disclosure. Defendant's claim, of an unkept promise by the State, is based on his own failure to disclose the alleged promise.

Not having made full disclosure to the trial court at the time that inquiry was made concerning the details of the plea bargain, defendant seeks to obtain advantage from his own omission. He may not do so. The nondisclosure waived the claim of an unkept promise by the State. See *State v. Garcia*, 80 N.M. 466, 457 P.2d 985 (1969); *State v. Edwards*, 54 N.M. 189, 217 P.2d 854 (1950); *State v. Duran*, 80 N.M. 406, 456 P.2d 880 (Ct.App.1969). Compare *Baird v. State*, 90 N.M. 667, 568 P.2d 193 (1977). *Santobello v. New York*, supra, [404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)].

Defendant did not raise as an issue before the trial court that he was denied the effective assistance of counsel. Such contention was raised for the first time in this court on appeal. Although ineffective assistance of counsel may constitute fundamental error where properly plead and litigated, *State v. Luna*, 92 N.M. 680, 594 P.2d 340 (Ct.App. 1979), under the facts of this case, this court should not reverse the trial court's ruling on the basis of an issue not fully or properly litigated below, or upon an issue not invoked before the trial court, and which is contrary to an express determination by the trial judge who found that no unkept promise existed.

To preserve a question for appellate review it must appear from the record that a ruling or decision by the trial court was fairly invoked, or a finding expressly requested. *Cf. State v. Kenney*, 81 N.M. 368, 467 P.2d 34 (Ct.App.1970); *State v. Snow*, 84 N.M. 399, 503 P.2d 1177 (Ct.App.), *cert. denied*, 84 N.M. 390, 503 P.2d 1168 (1972); see also N.M.R.Crim.App. 308, N.M.S.A.,

1978. Because such issue was not properly presented or preserved as an appellate issue and because the trial court found no unkept promise was made, I would affirm the trial court's ruling below.

The judgment of the district judge should be affirmed.