911 P.2d 884

STATE of New Mexico, ex rel. CHIL-
DREN, YOUTH AND FAMILIES DE-
PARTMENT, Petitioner–Appellee,

v.

In the Matter of the Termination of the
Parental Rights of LILLI L., Luis L.,
and Jose B., Respondents, With Respect
to Jesus C. and Michael C., Children,

Lilli L., Respondent–Appellant.

No. 16379.

Court of Appeals of New Mexico.

Oct. 24, 1995.

Joseph J. Mullins, Patricia M. Taylor, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Respondent–Appellant Lilli L.

I. Nancy Colella, Darla M. Silva, Children's Court Attorneys, Children, Youth & Families Department, Albuquerque, for Petitioner–Appellee.

John P. Viebranz, Socorro, Guardian Ad Litem.

## OPINION

DONNELLY, Judge.

Lillie L. (Mother) appeals from an order of the children's court terminating her parental rights to her two minor sons. Four issues are presented on appeal: (1) whether the order to terminate Mother's parental rights should be vacated because the Children, Youth and Families Department (Department) failed to request that a guardian ad litem be appointed to represent her in such proceedings; (2) whether the children's court erred in terminating Mother's parental rights based on Mother's admissions in an earlier stipulated judgment; (3) whether the Department's actions violated Mother's due process rights; and (4) whether the children's court erred in finding that Mother had failed to make substantial progress in developing her parenting skills under a treatment plan approved by the children's court. For the reasons discussed herein, we reverse.

## FACTS

In the spring of 1991, Mother, aged fifteen, a non-citizen and an indigent, was living in Socorro, New Mexico, with her two minor sons, Jesus L., born September 3, 1988, and Michael L., born May 7, 1990. On April 2, 1991, the Department filed suit against Mother in Socorro County Cause No. SQ–91–03, alleging that her two children were "neglected and/or abused."

The neglect and abuse action sought to have the custody of the two children placed in the Department. The Department was granted custody of Jesus by ex parte order on April 2, 1991. A guardian ad litem was appointed to represent Mother's two children on April 8, 1991. On April 10, 1991, the Department was granted custody of Michael. Mother was unrepresented by counsel at the hearing on April 10, 1991. At the custody hearing, the children's court heard testimony from a social worker, Mother, and Mother's boyfriend. At the conclusion of the hearing, the children's court granted temporary custody of Mother's two sons to the Department pending a subsequent adjudicatory hearing.

On June 21, 1991, the date set for an adjudicatory hearing, Mother was still without counsel. The children's court continued the hearing and appointed Neil P. Mertz, a Socorro attorney, to represent Mother, and rescheduled the adjudicatory hearing for July 8, 1991. Mother was not present at this hearing because she had been deported on June 28, 1991, by immigration authorities. Mother's court-appointed counsel requested that he be permitted to withdraw. In response to this motion, the children's court appointed John Lawit, an Albuquerque attorney who practiced primarily in immigration law, to represent Mother, and again rescheduled the adjudicatory hearing set for August 15, 1991. This hearing date was also subsequently continued. Shortly thereafter Mother re-entered the United States and filed an application with federal authorities for resident status.

On July 31, 1992, Mother personally appeared before the children's court. Her court-appointed attorney was not physically present, but communicated with the court at the hearing by telephone. At this hearing, the children's court attorney presented a stipulated judgment and disposition to the court, stated that it had been approved by Mother's counsel, and requested that it be signed by the children's court.

Mother's court-appointed counsel advised the children's court over the telephone that Mother agreed to enter a consent decree, admit the allegations of neglect, and to consent to the entry of the stipulated judgment and disposition. The children's court did not question Mother to determine whether she understood the nature of the proceedings or whether she concurred in the representations

of her court-appointed attorney. At the conclusion of the hearing, the children's court approved the stipulated judgment and disposition.

Under the provisions of the stipulated judgment, Mother purportedly admitted the allegations of the petition, and the parties agreed to the implementation of a treatment plan to assist Mother in developing her parenting skills, with a view to reunite Mother and her two sons. After working with Mother for approximately one year, on June 21, 1993, the Department filed a second suit, Socorro County Cause No. SA-93-02, seeking to terminate Mother's parental rights. The petition alleged, among other things:

> The children were placed in the Department's custody in April, 1991, due to physical abuse and physical neglect. At that time, [Mother] was 15 years old. The father of [Jesus] (then 1 year old) is Luis L. who was [Mother's] stepfather. (Previously, [Mother] had been in the Department's custody due to ... sexual abuse by Luis. The case was dismissed after Luis was sentenced to prison).

> Despite efforts by the Department (which have included ongoing individual therapy; parenting skills training; participation in the children's treatment), [Mother] has not made progress.... Although she has acknowledged to the Department that her live-in boyfriend, who was the abuser, will not allow her children to live in his home, she has made no effort to change her living arrangements.

Thereafter, the children's court appointed the law firm of Rodey, Dickason, Sloan, Akin and Robb to represent Mother in the second case. Both Cause No. SQ-91-03 and Cause No. SA-93-02 were consolidated for trial.

Trial on the merits began on November 22, 1993, was suspended until September 15, 1994, was thereafter continued to November 29, 1994, and was concluded on January 3, 1995. At trial on the merits, over Mother's objection, the Department relied on the provisions of the stipulated order and disposition in Cause No. SQ-91-03 to establish that the children had been neglected. At the conclusion of the trial, the children's court adopted findings of fact and conclusions of law, and,

on February 17, 1995, entered a judgment terminating Mother's parental rights to her two sons.

### I. *Failure to Appoint Guardian Ad Litem*

■ Mother argues that because she was a minor and only fifteen years of age at the time the children's court approved her consent to the entry of a stipulated judgment, the court should have appointed both a guardian ad litem and an attorney to represent her. Mother argues that this omission deprived the children's court of jurisdiction, thus invalidating any subsequent proceedings.

■ As a general rule, the court, upon being apprised that a minor is unrepresented by counsel, has a duty to appoint a guardian ad litem *or* an attorney to protect the interests of such child. *See* NMSA 1978, § 32A-4-10 (Repl.Pamp.1995); SCRA 1986, 1-017(C) (Repl.1992); SCRA 1986, 16-114 (Repl.1995) (client under a disability); *see also Wasson v. Wasson*, 92 N.M. 162, 163, 584 P.2d 713, 714 (Ct.App.1978). Under SCRA 1-017(C), when an infant defendant is without representation, it is the duty of the court to "appoint a guardian ad litem for [such] infant or incompetent person not otherwise represented in [the] action *or shall make such other order as it deems proper for the protection of the infant* or incompetent person." (Emphasis added.)

SCRA 16-114 states:

> A. Client-lawyer relationship. When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of *minority,* mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

> B. Protective action. A lawyer may seek the appointment of a guardian or conservator *or take other protective action with respect to a client,* only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest. [Emphasis added.]

Although, as noted by our Supreme Court in *Collins ex rel. Collins v. Tabet,* 111 N.M. 391, 400, 806 P.2d 40, 49 (1991), while it is a general practice under SCRA 1–017(C) for a guardian ad litem to be appointed to represent a minor who is a defendant in a civil case, it is clear the court is not required to appoint a guardian ad litem where the child is represented by counsel in such action. Here, despite the initial delay in appointing an attorney to represent Mother in the neglect and abuse case, such delay did not deprive the children's court of jurisdiction. SCRA 1–017(C); *see also* SCRA 16–114.

■ Mother correctly observes that a failure to appoint either counsel *or* a guardian ad litem to protect the interests of a minor may constitute a denial of due process, thereby invalidating such proceedings. *See* NMSA 1978, §§ 32A–1–7; 32A–1–16 (Repl. Pamp.1995); *see also State v. Lucero,* 97 N.M. 346, 352, 639 P.2d 1200, 1206 (Ct.App. 1981) ("Due process embraces the requirement that a guilty plea be made voluntarily and intelligently."); *State v. Doe,* 91 N.M. 232, 236, 572 P.2d 960, 964 (Ct.App.) (child has right to counsel and to have counsel present at any proceeding where child is a participant), *cert. denied,* 91 N.M. 249, 572 P.2d 1257 (1977). However, the failure to appoint a guardian ad litem for Mother was not fatal. Upon learning that Mother was without legal representation, the children's court duly appointed counsel to represent her pursuant to SCRA 1–017(C); thus, we agree with the Department that the children's court was not deprived of jurisdiction in the proceedings below.[1]

II. *Validity of the Stipulated Judgment and Disposition*

■ Next, Mother argues that the children's court's failure to personally address her in open court, as required by SCRA 1986, 10–307, concerning her understanding and consent to the stipulated judgment and disposition voided her purported admission

that her children were neglected. She also argues that the children's court's decision to terminate her parental rights in Cause No. SA–93–02 is invalid because the children's court premised its finding that the children were neglected on Mother's invalid admission in the first case.

The children's court in the termination case found that "[t]he children have been adjudicated as neglected children in cause # SQ–91–03 as shown by the Stipulated Judgment and Disposition entered on July 31, 1992[, and] ... [t]he Department met its burden of proof by clear and convincing evidence."

At the July 31, 1992, hearing in the neglect proceedings, although Mother appeared personally in court, her court-appointed attorney was not present. He, instead, communicated with the court by telephone. The Department presented a proposed stipulated judgment and disposition. The children's court inquired of Mother's attorney as to whether he had approved the proposed judgment and he informed the court that he did. The children's court, however, did not personally question Mother's attorney concerning the extent to which he had explained the nature of the proceedings to her, whether she consented to the allegations of the petition, or whether she fully understood the import of the stipulated judgment, the proposed disposition, or the consequences of the entry of the stipulated agreement.

What is the effect of the failure of the children's court to personally address Mother in open court concerning whether she concurred in the proposed stipulated judgment, and the consequences thereof? We conclude that the failure to make personal inquiry of Mother of the matters specified in SCRA 10–307(C) and (D), under the circumstances existing here, precludes the use of Mother's purported admission of neglect in the pro-

---

1. Although appointment of a guardian ad litem was not mandatory, such appointment would appear to have been appropriate in this case. The attorney appointed to represent Mother in the first case practiced primarily in immigration law and disavowed any knowledge of child custo- dy proceedings, and twice requested co-counsel be appointed to assist him concerning these issues. Moreover, at the time of the hearing, Mother was a fifteen-year-old foreign national, whose limited intelligence was raised as a specific issue in these proceedings.

ceedings for the termination of Mother's parental rights.

SCRA 10–307 states, in applicable part:

C.  Inquiry of respondent.  The court *shall not* accept an admission or approve a consent decree without first, by addressing the respondent personally in open court, determining that:

(1)  he understands the allegations of the petition;

(2)  he understands the dispositions that the court may make if the allegations of the petition are found to be true;

(3)  he understands that he has a right to deny the allegations in the petition and to have a trial on the allegations;

(4)  he understands that if he makes an admission or agrees to the entry of the consent decree, he is waiving the right to a trial; and

(5)  the admission or provisions of the consent decree are voluntary and not the result of force or threats or of promises other than any consent decree agreement reached.

D.  Basis for admission or consent decree.  The court *shall not enter judgment upon an admission or approve a consent decree without making such inquiry* as shall satisfy the court that there is a factual basis for the admission or consent decree. [Emphasis added.]

The language directing that "[t]he court *shall not* accept an admission or approve a consent decree without first, by addressing the respondent personally in open court," is mandatory.  SCRA 10–307(C) (emphasis added).  *See Redman v. Board of Regents,* 102 N.M. 234, 238, 693 P.2d 1266, 1270 (Ct. App.1984) ("The use of the word 'shall' ordinarily imposes a mandatory requirement."), *cert. denied,* 102 N.M. 225, 693 P.2d 591 (1985); *see also State v. Davis,* 97 N.M. 745, 748, 643 P.2d 614, 617 (Ct.App.1982) ("shall," as used in rules of criminal procedure, is

mandatory); *In re A.B.,* 151 Wis.2d 312, 444 N.W.2d 415, 418 (Ct.App.1989) (in light of the consequences of order terminating parental rights, court's inquiries required by law must be searching and penetrating).

SCRA 10–307(C) and (D) (Children's Court Rule) parallel, in part, the provisions of SCRA 1986, 5–303(E) and (F) (Repl.1992) of the Rules of Criminal Procedure.  SCRA 5–303(E) specifies, in pertinent part, that "[t]he court shall not accept a plea of guilty, no contest or guilty but mentally ill without first, by addressing the defendant personally in open court, informing the defendant of [certain rights] and determining that [the defendant] understands [the consequences of such plea]."  Similarly, SCRA 5–303(F) directs, in pertinent part, that "[t]he court shall not accept a plea of guilty, no contest or guilty but mentally ill without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement."

In *Lucero,* 97 N.M. at 350, 639 P.2d at 1204, this Court considered the consequences of a trial court's failure in a criminal case to personally inquire of the defendant pursuant to former Rule 21 of the New Mexico Rules of Criminal Procedure (subsequently supplanted by SCRA 5–303), whether the defendant's plea resulted from prior discussions between himself or his attorney and the state.  The *Lucero* Court adopted the rationale found in federal decisions relating to Federal Rule of Criminal Procedure 11(d), imposing upon trial courts a responsibility to fully comply with the directives of such rule.[2] The Court observed that the validity of a defendant's purported agreement or plea will not be resolved on the basis of whether the court's inquiries of the defendant adhered to a checklist of specific questions; instead, the validity of the agreement will be determined by a reviewing court by examination of the record as a whole so as to ascertain whether

**2.**  In ascertaining whether a trial court has properly implemented the requirements of Federal Rule of Criminal Procedure 11 prior to accepting an admission of guilt, by making a record of such inquiries and the defendant's responses, a number of federal court decisions have held that a factual basis for the plea is required to be shown

in the record.  *See United States v. Syal,* 963 F.2d 900, 905–06 (6th Cir.1992); *United States v. Aldridge,* 553 F.2d 922, 922–23 (5th Cir.1977) (per curiam); *United States v. Crook,* 526 F.2d 708, 709–10 (5th Cir.1976) (per curiam); *United States v. Zuber,* 528 F.2d 981, 982–83 (9th Cir. 1976) (per curiam).

the plea was knowing, intelligent, voluntary, and not induced by any promises. Based on this exposition, the *Lucero* Court reversed the defendant's convictions and ordered that he be permitted to withdraw his guilty plea. Applying this standard to the instant case, it is undisputed that Mother was a fifteen-year-old foreign national, that her counsel was not personally present before the children's court, and that no inquiries as required by SCRA 10–307 were directed to Mother at the hearing. *See State ex rel. Department of Human Servs. v. Perlman,* 96 N.M. 779, 782, 635 P.2d 588, 591 (Ct.App.1981) (order terminating parental rights based on void decree of neglect cannot stand). Under this record, we conclude that due process and fundamental fairness preclude the use of Mother's purported admission of child neglect as a basis for terminating her parental rights.

In *T.M.F. v. Children's Serv. Soc'y of Wisconsin,* 112 Wis.2d 180, 332 N.W.2d 293, 296 (1983), the Wisconsin Supreme Court considered a somewhat analogous issue concerning the validity of the consent of a sixteen-year-old mother to the termination of her parental rights to her newborn infant. In that case, a Wisconsin statute directed that prior to accepting a voluntary agreement to terminate parental rights, the court must determine whether the parent's consent to termination of his or her parental rights is voluntary and informed. *Id.* The statute also required that "[b]efore accepting an admission of the alleged facts in [the] petition, the court shall ... [a]ddress the parties," determine whether the consent is voluntary and has been given with an "understanding of the nature of the [matters] alleged in the petition and the potential dispositions," determine "whether any promises or threats were made to elicit an admission," and "[m]ake such inquiries as satisfactorily establish that there is a factual basis for the admission." *Id.,* 332 N.W.2d at 296–97 n. 5.

The *T.M.F.* court found that the proceedings before the circuit court were inadequate to permit acceptance of the mother's consent to the termination of her parental rights and reversed the circuit court's order and directed that the mother be permitted to withdraw her consent. In reaching its decision, the court observed:

> Because the circuit court's decision on termination of parental rights will form the basis for future disposition of the child, the ... court must exercise all available precautions, reflected in its judicial inquiry on the record, to ensure that the consent is voluntary and informed ... it will help ensure that the ... court's decision is just and accurate, ... [and] it will facilitate appellate review.

*Id.,* 332 N.W.2d at 297.

The Delaware Supreme Court also found a lack of informed consent invalidated proceedings to terminate the mother's parental rights in *In re Burns,* 519 A.2d 638 (Del. 1986). Shortly after giving birth to an illegitimate son, the mother, aged seventeen, found herself destitute and homeless. She approached the state division of child protective services (state) for help. As a condition of its assistance, she signed a three-page legal document providing for the "placement" of her son. The state then required her to sign a consent awarding custody to the state. This document stated that a hearing would be held in three months at which time custody would be transferred to the state unless contested. The mother was a minor and without the advice of counsel at the time she signed both documents.

Both the mother and her baby were placed in foster care, and the mother began job training and working toward her GED. Following a hearing conducted without notice to the mother, and without her knowledge, the family court awarded custody of her son to the state. After the mother turned eighteen, she attempted to take her son and leave. The foster mother refused to allow the mother to remove her child, and her son was forcibly taken from her by police. Thereafter, the mother was unable to comply with the state's parenting plans and the state moved to terminate her parental rights. The family court issued a termination order but the Delaware Supreme Court reversed. The Delaware court held:

> Here, the due process issues begin with [the mother's] "voluntary" execution of the placement agreement on January 4, 1984,

followed by the so-called "consent", signed on January 30, 1984, purporting to "voluntarily" transfer [her son's] custody to the Division. These documents of vast import were executed by a minor without the assistance of counsel, a guardian *ad litem*, or any independent person standing in *loco parentis*. While the Division technically had custody of [the mother], it could hardly satisfy due process standards by any advice it rendered in getting her to convey her own parental rights to the Division.

*In re Burns*, 519 A.2d at 646.

The Department asserts that since Mother has not moved to withdraw her admission of neglect in Cause No. SQ–91–03, her admission of neglect was properly admitted in the termination case. The Department also argues that Mother should have moved to set aside the stipulated judgment in the first case under SCRA 1986 1–060(B) (Repl.1992). We find these arguments unpersuasive. Because the children's court consolidated the neglect proceedings with the action to terminate Mother's parental rights, and the order terminating her parental rights in the consolidated cases is before us on appeal, Mother's challenge to the validity of her consent to the entry of the stipulated judgment was properly preserved below and constitutes a proper issue on appeal.

At the time of the entry of the consent decree in Cause No. SQ–91–03, Mother was a minor and a foreign national, she was indigent, had no guardian ad litem or parents present, her court-appointed attorney admitted that he had a lack of familiarity with children's court proceedings and requested that co-counsel be appointed, and that there were no inquiries made of Mother in open court. Under this state of the record, we conclude that due process precludes the use of Mother's purported admissions in Cause No. SQ–91–03 to establish neglect in Cause No. SA–93–02. Here, there was a failure to determine Mother's understanding of the stipulated judgment and whether there was a factual basis for her admissions as required by SCRA 10–307(C) and (D). Therefore, it was error to permit the Department to use Mother's alleged admission of neglect in the earlier case as evidence in the termination proceeding. *See Perlman*, 96 N.M. at 782, 635 P.2d at 591 (disregard of rule regarding minor's right to notice of right to counsel held denial of due process); *see also In re Ronald A.*, 110 N.M. 454, 455, 797 P.2d 243, 244 (1990) (actions to terminate parental rights must be conducted with scrupulous fairness).

■ The Department additionally argues that this Court should affirm the children's court's termination of Mother's parental rights because of the court's finding of "ongoing" neglect. We disagree. The children's court's Finding No. 5 stated that "[t]he causes and conditions of the neglect of the children by [Mother] are unlikely to change in the foreseeable future, and have not changed in the past despite the efforts by the [Department] and other appropriate agencies to assist [Mother]." The Department argues this finding is supported by sufficient evidence indicating that Mother is unable to properly care for the children without daily supervision and monitoring. In response, Mother argues that the record fails to contain proof of "ongoing child neglect" by her because the children have been in foster homes since they were removed from her, and she has not had custody of the children since April 1991. Moreover, Mother points out that she served the Department with requests for admissions that her children had not been neglected at any time subsequent to November 23, 1993, and the Department concurred in this admission. Under these circumstances, we agree that the children's court's other findings cannot be construed to support a finding of "ongoing child neglect." In order to establish "ongoing child neglect," there must be clear and convincing evidence of neglect in the first instance, and evidence that such condition has not changed and is unlikely to change in the foreseeable future. *See State v. Penny J.*, 119 N.M. 328, 333, 890 P.2d 389, 394 (Ct.App.), *cert. denied*, 119 N.M. 20, 888 P.2d 466 (1994). Manifestly, considerations of fundamental fairness preclude the use of Mother's purported admissions in the 1992 stipulated judgment and disposition as a basis to establish neglect and terminate her parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct.

1388, 1394–95, 71 L.Ed.2d 599 (1982) (adherence to stringent standards of fairness required for termination of parental rights); *see also In re Ronald A.*, 110 N.M. at 455, 797 P.2d at 244.[3]

Because of our disposition of this issue, we need not address Mother's other contentions.

## CONCLUSION

The children's court's finding of neglect was based on Mother's admissions in the consent decree. Because we conclude that it was improper to use this admission to establish neglect, the use of this admission violated Mother's due process rights, and the record does not contain other sufficient evidence to establish neglect on the part of Mother, the order terminating Mother's parental rights is reversed. *See Garcia v. Mora Painting & Decorating*, 112 N.M. 596, 603, 817 P.2d 1238, 1245 (Ct.App.1991) (finding induced by error of law cannot stand on appeal).

The cause is reversed and remanded to the children's court to conduct further proceedings pursuant to NMSA 1978, Section 32A–4–25 (Repl.Pamp.1995), or to reinstitute termination proceedings, excluding any evidence of Mother's admissions in Socorro County Children's Court Cause No. SQ–91–03.

IT IS SO ORDERED.

BLACK and BUSTAMANTE, JJ., concur.

---

**3.** The Delaware Supreme Court's observations in *In re Burns* are also relevant here:

Stripped of all other considerations and factors, the bare facts may support a facile conclusion that this very young and immature mother had failed to plan adequately for [her son's] needs within the meaning of Section 1103(5), and that the conditions which led to his placement still persisted when [the mother's] parental rights were terminated. However, the failure ... to recognize and comply with both the minimal requirements of due process and the Child Welfare Act at several steps along the path to termination of the mother's parental rights, ... vitiate the trial court's judgment and mandate reversal.
519 A.2d at 644.